FILED
United States Court of Appeals
Tenth Circuit

February 10, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

No. 07-4118

CHARLES DENNIS FRIEDMAN,

Defendant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:05-CR-933-JTG)**

---

Elizabethanne C. Stevens, Assistant United States Attorney (Brett L. Tolman, United States Attorney, with her on the briefs), District of Utah, Salt Lake City, Utah, for Plaintiff-Appellant.

Jeremy M. Delicino, (Stephen R. McCaughey, on the briefs), Salt Lake City, Utah, for Defendant-Appellee.

---

Before **KELLY**, **SEYMOUR**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

# I. INTRODUCTION

Charles Friedman pleaded guilty to bank robbery. 18 U.S.C. § 2113(a). Varying dramatically from the 151- to 188-month range set out in the advisory Sentencing Guidelines, the district court sentenced Friedman to fifty-seven months' imprisonment. The government appeals, claiming the sentence imposed by the district court is substantively unreasonable. Exercising jurisdiction pursuant to 18 U.S.C. § 3742(b) and 28 U.S.C. § 1291, we **reverse** Friedman's sentence and **remand** the matter to the district court for further proceedings consistent with this opinion.

# II. BACKGROUND

Friedman is a serial bank robber.[1] In May 1986, he robbed a bank in Arizona. During the Arizona robbery, he used a note indicating he had a gun. In June 1986, he robbed a bank in Utah while armed with a .45-caliber automatic pistol. Friedman was convicted of the Utah robbery in August 1986; he was sentenced to twenty years' imprisonment. He was convicted of the Arizona

---

[1]Friedman's general criminal history is extensive, beginning with an adjudication for burglary at the age of twelve. He has additional juvenile adjudications for assault with a deadly weapon, escape, burglary, and two counts of vehicle theft. In addition to his four bank robbery convictions, Friedman has adult convictions for vehicle theft, conspiracy to escape, assault with a deadly weapon, making a false claim against the United States government, felon with a weapon, attempted escape, and damage to a jail. It appears that since the age of twelve, Friedman has spent the overwhelming majority of his life either as a ward of the state, in a juvenile detention facility, or in prison.

robbery in February 1987; he was sentenced to three years' imprisonment, to run consecutively to the sentence on the Utah robbery conviction. Friedman was paroled on June 13, 1998.[2]

Law enforcement officials investigated Friedman as a suspect in three bank robberies that took place between December 30, 1998, and January 19, 1999. During an arrest of Friedman on unrelated charges, officers found "bait bills" that were taken during the January 19th robbery. Shortly thereafter, he was indicted on three counts of bank robbery. Friedman pleaded guilty to one count, a 1999 robbery, in exchange for the dismissal of the remaining two charges.

The United States District Court for the District of Utah sentenced Friedman to seventy-one months' imprisonment. Pursuant to the terms of the plea agreement between Friedman and the government, the district court ordered the sentence to run concurrently with any term of incarceration imposed by the United States Parole Commission ("USPC") upon revocation of Friedman's parole on his previous convictions. Ultimately, however, the USPC declined to cooperate with such an approach, refusing to execute on the parole warrant until Friedman completed his seventy-one-month sentence for the 1999 bank robbery. Without such an action on the part of the USPC, the Bureau of Prisons informed

---

[2]Both of these robberies were committed before the effective date of the Sentencing Reform Act of 1984 ("SRA"), 18 U.S.C. § 3551 *et seq*. *United States v. Reider*, 103 F.3d 99, 101 (10th Cir. 1996) (noting the SRA did not take effect until November 1, 1987). Accordingly, these sentences were imposed under the law in effect prior to the existence of the Sentencing Guidelines.

the court it was unable to run Friedman's sentence concurrently to whatever sentence the USPC might impose when it executed its parole warrant. In response, the district court issued two amended orders, modifying Friedman's sentence to one day of imprisonment, followed by three years' supervised release.[3]

Friedman was placed on supervised release for the 1999 robbery in June 2005.[4] Five months later, on November 8, 2005, Friedman robbed Chase Bank in West Valley City, Utah. Friedman was indicted on bank robbery charges in December of 2005; the Chase Bank case was transferred to the same district court judge who handled the 1999 robbery conviction and consolidated with proceedings to revoke Friedman's supervised release on the 1999 bank robbery conviction. Friedman thereafter pleaded guilty to robbing Chase Bank.

In advance of the sentencing hearing on the Chase Bank conviction, a United States probation officer prepared a presentence report ("PSR"). The PSR first calculated Friedman's offense level by reference to U.S.S.G. § 2B3.1, the Guideline provision applicable to robberies. Pursuant to § 2B3.1(a), Friedman's

_____

[3]The record does not reveal the jurisdictional basis upon which the district court relied to amend Friedman's sentence some six years after it was originally imposed. In any event, it does not appear the government opposed the actions taken by the district court to, in effect, force the USPC to act so that Friedman could serve his sentence on the 1999 robbery concurrently with any term imposed by the USPC upon revocation of Friedman's parole on the 1986 robberies.

[4]It appears from the record that he was, at this time, also on parole from his 1986 and 1987 bank robbery convictions.

base offense level was 20. The PSR adjusted Friedman's offense level upward

two levels because the money was taken from a financial institution. U.S.S.G.

§ 2B3.1(b)(1). After deducting three levels for acceptance of responsibility, *id.*

§ 3E1.1, Friedman's adjusted offense level was 19. This offense level, coupled

with Friedman's criminal history category V, resulted in a sentencing range of

fifty-seven to seventy-one months' imprisonment. *Id.* ch. 5 pt. A.

Pursuant to the terms of § 4B1.1, the PSR also calculated Friedman's

advisory sentencing range under the career offender provisions of the Guidelines.[5]

Under the career offender guideline, Friedman's offense level was 32[6] and his

criminal history category was VI.[7] After a three-level reduction to his offense

level for acceptance of responsibility, Friedman's offense level of 29 and criminal

history category VI resulted in a sentencing range of 151 to 188 months. *Id.*

Because this range was "greater than the offense level otherwise applicable"

under § 2B3.1, it became Friedman's correctly calculated advisory Guideline

---

[5]Friedman qualified as a career offender because he was at least eighteen-years old when he committed the Chase Bank robbery, the Chase Bank robbery was a crime of violence, and he had at least two prior felony convictions for crimes of violence (i.e., bank robbery). U.S.S.G. § 4B1.1(a) (setting out elements of career offender classification under the Guidelines); *id.* § 4B1.2(a) & app. n.1 (defining crime of violence to include robbery).

[6]Because the statutory maximum sentence for a bank robbery conviction is twenty years, 18 U.S.C. § 2113(a), the career offender guideline sets the offense level at 32. U.S.S.G. § 4B1.1(b)(C).

[7]Every defendant who qualifies as a career offender is assigned a criminal history category VI. U.S.S.G. § 4B1.1(b).

range. *Id.* § 4B1.1(b). The PSR concluded by noting there was no information to suggest that either an upward or a downward departure was warranted in the case and "[n]o other sentencing factors have been identified by the probation office."

Friedman filed objections to the PSR. As relevant to the issues on appeal, he simply objected to the PSR because "there is no consideration given to any variances from the [G]uidelines based on factors set forth in 18 U.S.C. § 3553." The government filed a written response to Friedman's objections, specifically requesting that the district court sentence Friedman within the guideline range of 151 to 188 months.[8] Defense counsel did not file a sentencing memorandum, but Friedman did submit a lengthy letter to the district court. Friedman explained he had been in prison for all but twenty months of the previous twenty-seven years and was institutionalized extensively as a juvenile. Friedman asserted his "lifetime of prisons and institutions did nothing to prepare [him] for the free

_____

[8]The United States argued as follows regarding the question of the appropriate sentence for Friedman's bank robbery conviction:

From the United States' perspective, the purpose of this prosecution is to ensure that Friedman receives a just sentence for what is hoped to be the culmination of his criminal career during which he has repeatedly victimized persons and financial institutions. The United States respectfully requests that this Court order a term of imprisonment that fairly reflects the seriousness of the crime, protects the public, deters the defendant and others like him, and provides a just punishment. Taking into account Friedman's history and characteristics, as well as the nature and circumstances of this offense, Friedman warrants a stiff "Career Offender" sentence of imprisonment.

world," and explained he thought he robbed the Chase Bank "not for the money or opportunity, but to escape the pressures of the [foreign] world [he] was in." Friedman stated he was not violent and was not a career criminal. As to his culpability, Friedman stated as follows: "My point here is that I have done my share of prison time, considering my crimes, and as I pointed out earlier in this letter, I'm much like the turtle on the fencepost—I didn't get into this predicament all on my own. I think it's time the 'system' took 'some' responsibility." Friedman asked the district court to consider an alternative to long-term incarceration and stated he would not "abuse any opportunity" the court gave him.

Friedman's sentencing hearing took place on March 1, 2007. Defense counsel made a very brief opening statement, simply requesting a sentence of seven to eight years based on the § 3553 factors. Defense counsel did not specify the § 3553 factors to which he was referring, although he did note Friedman did not use a gun when he robbed the bank. The district court turned its attention to Friedman's letter:

> Court: And you had been thinking after some further thought that you really do like to be on the great outside?
> Friedman: Yes, sir.
>  . . . .
> Court: Well, if you don't want to be in prison, why do you keep doing that?
> Friedman: . . . . I'm definitely here . . . and I've admitted my responsibility to the crime. . . . [B]ut I don't think I'm here on my

-7-

own and I don't think that's been sufficiently addressed either by the government or basically us as far as my history goes.

. . . . I've got an extensive juvenile history that involved like incorrigible or runaway, things that really weren't criminal but were enough to get me into the system at the time at a very young age. And it's never stopped since then.

. . . . I'll be 45 this year. And my breaks from institutions has been very brief since like the age of 10. And I think . . . somewhere along the line, there's some other responsibility has to be assigned to the system itself. I've gotten no halfway house this last time I was out. There's no adjustment period there. I did find, Your Honor, in the statute while I was in prison, something called a Demonstration Project or a Demonstration Program that was funded through this year and was specifically designed for high-risk reoffenders, people that fit my category, people that have been in prison a long time, which is real rare to find any kind of program for people like me. I wrote to counsel at the time . . . . I wrote to my last known probation officer . . . . I approached the administration at the prison I was at . . . . Nobody knew anything about it.

. . . . Judge, it's not a matter of, "Don't you like it out here?" It's a matter of not knowing how to live out here. And normal people that are out here don't understand that, and I tried to explain to you in my letter as best I could . . . . It's hard just to come out of a maximum security penitentiary after years and years and come out here and be expected just to function normally.

Court: Well, it's hard to expect a system to be patterned directly for a person like you. You can be observing whatever programs are available; they're not going to create a new program for people who happen to be in prison almost perpetually. I feel sorry that you've been in prison for so long, but, you know, I didn't see anything in your long and well-written letter, eloquent in some parts, any remorse or any consideration of the victims that you have affected. You're worried about your life being affected. What about being concerned about their lives, about the trauma that you caused to a young teller who's thinking still, dreaming about the incident?

. . . .

Friedman: . . . . There is no doubt that the teller in the instant offense or any teller that is approached by a stranger and gets demanded to hand over money is probably a shocking experience. One of the things that I've continued to be dissatisfied in my particular case is that we've never talked to this teller. And from the

reports, both police reports and from probation, it appears that the young lady wasn't overly traumatized. And I was hoping that we could talk to her to maybe see what her position is. But taking a bank robbery—this is what I'm saying, Your Honor, I'm not saying that bank robbery is acceptable or it's a nontraumatizing experience for a teller. I know it is. But in this particular case, it wasn't the bank robbery we see on TV. I didn't swear at the lady. I didn't, you know what I mean. No rough language. I passed a piece of paper. It could have been a bogus check, and it could have been basically the same crime, that's my only point. If I did traumatize her, my sincere apologies and that is sincere.

The government requested a sentence within the advisory Guideline range and noted, based on his history, that Friedman was likely to reoffend upon release.

After listening to Friedman's and the government's arguments, the district court focused on the alterations to Friedman's sentencing range resulting from the career criminal provisions of § 4B1.1, stating as follows:

The thing that bothers me is the guideline range is 151 months is the low end, 94 of those months are given because of the status of the career offender. Under the nature of the offense and the characteristics of the individual under the statute, he might not be regarded as a career offender and would be given a sentence of 57 months. Isn't that enough for this particular offense?

When the government responded by arguing that the result of such a short sentence would be the victimization of additional individuals, the district court responded as follows:

Well, I don't believe it, but I didn't believe it the last time this came up and he proved me wrong. As a matter of fact, it was—how long? A matter of months, not years, after I had given you the break of your life, but you did it again. And it's submitted that you'll likely do it again. Maybe because you don't think there's any kind of a program out in the great world that is fashioned for you, and that

you're waiting for them to fashion something that you should be working on for yourself. You are the one who has to create the program. You don't have to expect somebody in the world to create a program for you. There are all kinds of program[s] that, if you take advantage of them, they would benefit you, greatly benefit you. I wish I didn't have to give you 151 months.

The district court then proceeded to impose a sentence of fifty-seven months' imprisonment:

Well, I've considered this. I may be an absolute fool to do this, but under the statute, and particularly with respect to the characteristics of the defendant, I'm very troubled to regard this man as a serial career offender, although he certainly is under the definition of the guidelines.

. . . .

. . . . The Court considers that a just and fair sentence for this crime . . . . But I'm convinced that for this crime, 57 months is adequate and that is almost five years . . . .

The district court then concluded the sentencing hearing by stating as follows: "The first time shame on you, the second time shame on me. So maybe I'm a fool to have given you this kind of a break twice, but somehow I have a feeling about you that you can make it and you're going to."

According to the statement of reasons attached to the judgment, the district court adopted the PSR without change, including the calculation of an advisory sentencing range of 151 to 188 months. The district court checked the box in the statement of reasons indicating it sentenced Friedman to a below-guideline sentence because of "the nature and circumstances of the offense and the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)." The

-10-

facts set forth to justify the sentence were "[u]nusual and compelling

characteristics of defendant including changed attitude. Court determined to allow

one more chance after substantial period of incarceration."[9]

### III. DISCUSSION

*A. Standard of Review*

After the Supreme Court's decision in *United States v. Booker*, 543 U.S.

220 (2005), this court reviews sentences for reasonableness. *United States v.*

*Alapizco-Valenzuela*, 546 F.3d 1208, 1214 (10th Cir. 2008). "Reasonableness

review is a two-step process comprising a procedural and a substantive

component." *United States v. Verdin-Garcia*, 516 F.3d 884, 895 (10th Cir. 2008).

Review for procedural reasonableness focuses on whether the district court

committed any error in calculating or explaining the sentence. *Gall v. United*

*States*, 128 S. Ct. 586, 597 (2007). Review for substantive reasonableness

focuses on "whether the length of the sentence is reasonable given all the

---

[9]After sentencing Friedman on the Chase Bank robbery conviction, the district court moved on to the revocation of Friedman's supervised release on the 1999 bank robbery conviction. The district court sentenced Friedman to a thirty-seven month term of imprisonment for his violations of the terms of supervised release and ordered the sentence to be served consecutively to the fifty-seven month sentence on the Chase Bank robbery. In so doing, the district court noted "57 and 37 is 94 as compared to 151. I think that's a fair sentence." After sentencing, however, the district court changed the sentence on the supervised release violations to twenty-four months when it learned that was the maximum sentence it could impose.

circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)."

*Alapizco-Valenzuela*, 546 F.3d at 1215 (quotation omitted).

On appeal, the government limits its challenge to the substantive reasonableness of Friedman's fifty-seven month sentence. When reviewing a sentence for substantive reasonableness, this court employs the abuse-of-discretion standard, *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008), a standard requiring "substantial deference to district courts." *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008) (quotation omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Munoz-Nava*, 524 F.3d at 1146 (quotation omitted). The abuse-of-discretion standard applies without regard to whether the district court imposes a sentence within or outside the advisory Guidelines range. *Id.* That is, this court does not apply a presumption of unreasonableness to sentencing variances. *Id.* Instead, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. . . . [T]hat [we] might reasonably have concluded [] a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.*

*B.  Analysis*

On appeal, the government argues the fifty-seven month sentence imposed by the district court, a ninety-four month variance from the bottom of the advisory Guidelines range, is substantively unreasonable when measured against the factors set out in 18 U.S.C. § 3553(a).  In particular, the government asserts that such a sentence fails to adequately consider the advisory Sentencing Guidelines, *id.* § 3553(a)(4); account for Friedman's extensive recidivist history, *id.* § 3553(a)(1); afford adequate deterrence and protect the public from further criminal conduct, *id.* § 3553(a)(2); and avoid unwarranted sentencing disparities, *id.* § 3553(a)(6).  Based on the record in this particular case, we agree with the government and conclude, even given the highly deferential abuse-of-discretion standard of review, that the sentence imposed by the district court is substantively unreasonable.[10]

---

[10]We note the undeniably sparse record in this case certainly bears on the question whether Friedman's sentence is substantively reasonable.  *See United States v. Bueno*, No. 06-4216, 2008 WL 5234045, at *3 (8th Cir. Dec. 17, 2008) (noting that extensive development of record on remand led court to affirm sentence it had previously concluded was unreasonable).  To compound matters, the district court did not undertake to explain, in even a limited fashion, why it was appropriate to treat Friedman as if he were not a career offender despite his overwhelmingly extensive criminal history.  *Cf. United States v. Gall*, 128 S. Ct. 586, 597 (2007) (holding that for a sentence to be procedurally reasonable a district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing"); *id.* (holding that when a district court varies from the advisory Guidelines range it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance," especially given

(continued...)

It is undisputed that, pursuant to the career offender provisions set out in U.S.S.G. § 4B1.1, Friedman's properly calculated advisory Guideline range is 151 to 188 months. In imposing sentence on Friedman, however, the district court simply disregarded the career offender provisions, stating as follows: "Under the nature of the offense and the characteristics of the individual under the statute, he might not be regarded as a career offender and would be given a sentence of 57 months." Other than noting in the judgment of conviction Friedman's "changed attitude," the district court never identified how the nature of the Chase Bank robbery or Friedman's individual characteristics supported a sentence amounting to 38% of the bottom of the advisory Guidelines range.[11] Furthermore, our review

_____

[10](...continued)
that "a major [variance] should be supported by a more significant justification than a minor one"). Unfortunately, neither the government nor Friedman asked the district court to explain its chosen sentence. Thus, any claim that the sentence imposed by the district court is procedurally unreasonable is waived. *United States v. Torres-Duenas*, 461 F.3d 1178, 1182-83 (10th Cir. 2006) ("[W]hen [a party] fails to object to the method by which the sentence was determined, such as . . . that the court did not adequately explain the sentence with reference to the factors set forth in [§ 3553(a)], we review only for plain error."). In any event, the government has specifically disclaimed in its brief on appeal any procedural challenge to the district court's sentencing decision. Thus, this court must simply review the substantive reasonableness of the sentence imposed by the district court pursuant to the factors set out in § 3553(a) against the backdrop of an exceedingly limited record and an almost complete absence of explanation on the part of the district court.

[11]Instead, as the district court made clear at the conclusion of the sentencing hearing, the sentence imposed in this case was based on the district court's hunch or "feeling that [Friedman] can make it." As noted below at some length, however, there is simply nothing in the record supporting the district

(continued...)

-14-

of the record reveals nothing to distinguish Friedman in any way from the run-of-the-mill career offender. *Gall*, 128 S. Ct. at 597 (holding a major variance should be supported by a "more significant justification").

To begin, Friedman has an extraordinarily extensive recidivist history. He admitted at the sentencing hearing that he had committed eight bank robberies. At least two of those robberies involved weapons or the threat of weapons. Within six months of his release from prison in 1998 on convictions for bank robbery and armed bank robbery committed in 1986, Friedman robbed more banks. Within five months of his 2005 release from prison for the 1999 bank robbery, he committed the Chase Bank robbery. At the time of the Chase Bank robbery, Friedman was on supervised release for the 1999 bank robbery and was on federal parole for the bank robberies committed in 1986.

More generally, Friedman's entire criminal history reveals a continuous pattern of criminal conduct, beginning from the time he was a juvenile. As a juvenile, Friedman had adjudications for burglaries, assault with a deadly weapon, and vehicle thefts. As an adult, in addition to the bank robberies, Friedman was convicted of attempted escape, damage to a jail, vehicle theft, conspiracy to escape, assault with a deadly weapon, making a false claim against the

---

[11](...continued)
court's "feeling" that Friedman would not reoffend if given an exceedingly lenient sentence. Instead, the only plausible indication from the admittedly limited record in this case is that Friedman will continue to follow the same pattern he has followed his entire life: committing crime after crime after crime.

government, and being a felon with a weapon. As Friedman noted in his letter to the court in advance of sentencing, he has only been able to remain free of prison for twenty months out of the twenty-seven years of his adult life.

Thus, as set out above, there is absolutely nothing in Friedman's criminal history to distinguish him in a positive way from those falling within the ambit of the § 4B1.1 career offender provisions. Nor can it be said that the record contains evidence about Friedman's other personal characteristics supporting an extraordinarily lenient sentence. A review of the sentencing transcript and Friedman's letter to the court reveals that rather than show remorse for his crimes, he spent a significant amount of time at sentencing blaming the "system" for his problems. He likewise showed a complete lack of understanding of the impact of the Chase Bank robbery when he asserted the teller "wasn't overly traumatized" because he did not "swear at the lady," and his robbing a bank with a note was "basically the same crime" as passing "a bogus check." Furthermore, although there was some discussion at an August 22, 2006, status conference about obtaining a psychological evaluation of Friedman for use at the sentencing hearing, the record reveals no such evidence was submitted. Thus, there is simply nothing in the record regarding Friedman's personal characteristics indicating leniency of the magnitude granted by the district court in this case was appropriate.

In light of Friedman's extensive criminal history, failure to accept full responsibility for his actions, and inability to grasp the impact of his virtually uninterrupted pattern of violent criminal conduct, the fifty-seven month sentence imposed by the district court fails to reflect the seriousness of the Chase Bank robbery, fails to promote respect for the law, fails to provide just punishment for the offense, fails to afford adequate general deterrence, and fails to specifically deter future criminal conduct on the part of Friedman. 18 U.S.C. § 3553(a)(2). The very purpose of § 4B1.1 is to carry out the congressional mandate that "certain 'career' offenders receive a sentence of imprisonment 'at or near the maximum term authorized.'" U.S.S.G. § 4B1.1 background; 28 U.S.C. § 994(h). By refusing to treat Friedman as a career offender without any genuinely distinguishing factors in Friedman's character and history, the district court created "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see also* U.S.S.G. § 4B1.1 background (noting the Sentencing Commission has refined the definition of career offender over time "to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate" in an effort to avoid unwarranted sentencing disparities). Although this court is well aware that the district court is in a "superior position to find facts and judge their import under § 3553(a)," *Gall*, 128 S. Ct. at 597 (quotation omitted), there is simply nothing in the limited record in this case to indicate, considering the

totality of the circumstances, that the sentence imposed by the district court is reasonable in light of the factors set out in § 3553(a).

In an attempt to persuade this court his sentence is substantively reasonable, Friedman asserts the district court appropriately took into consideration that he would receive an additional term of imprisonment for his violation of supervised release. It is certainly true that immediately after imposing sentence upon Friedman for the Chase Bank robbery, the district court proceeded to revoke his supervised release on the 1999 bank robbery conviction. The district court sentenced Friedman to a thirty-seven month term of imprisonment and ordered the sentence to be served consecutively to the sentence on the Chase Bank robbery. In so doing, the district court noted "57 and 37 is 94 as compared to 151. I think that's a fair sentence."

The record makes clear, however, that the sentence imposed by the district court on the supervised release violations did not play a significant role in its determination as to what the appropriate sentence should be for the Chase Bank robbery. After the completion of the sentencing hearing, the district court determined it could not sentence Friedman to more than twenty-four months on his violations of supervised release. The court issued an "Order Clarifying Judgment" and changed the supervised release sentence to twenty-four months, but did not make any changes to the bank robbery sentence. If the district court truly was considering the sentences as a package, it would have added thirteen

months to Friedman's bank robbery sentence to maintain a total term of ninety-four months' imprisonment. The district court, however, made no such change. Thus, we simply do not read the record as supporting Friedman's assertion that the district court considered the Chase Bank robbery sentence and the sentence on supervised release as a package which this court should consider in reviewing the substantive reasonableness of the sentence.[12]

Friedman next argues the district court simply disagreed with the career offender provisions of the Guidelines, something it is entitled to do after the Supreme Court's decision in *Kimbrough v. United States*, 128 S. Ct. 558 (2007). Contrary to Friedman's assertion, however, at no time did the district court state it disagreed with the policies underlying § 4B1.1 or believed § 4B1.1 poorly reflected the statutory considerations set out in § 3553(a). The district court did state that "[u]nder the nature of the offense and the characteristics of the individual, [Friedman] might not be regarded as a career offender and would be given a sentence of 57 months." This exceedingly limited and ambiguous statement, however, simply does not support Friedman's assertion that the district

---

[12]In any event, if the district court did, as a hypothetical matter, drastically reduce Friedman's bank robbery sentence to compensate for the consecutive nature of his sentence upon revocation of supervised release, that would amount to yet another variance from the advisory Guidelines without any discussion of the matter or supporting facts in the record. *See* U.S.S.G. § 5G1.3 app. n.3(c) (noting a sentence imposed upon revocation of supervised release should be imposed consecutively to any sentence imposed on an underlying crime which resulted in the revocation of supervised release); *id.* § 7B1.3(f) (same).

court believed the career offender guideline poorly reflected the statutory considerations set out in § 3553(a). Instead, it merely reflects the district court's conclusion that something about the nature of the Chase Bank robbery and Friedman's history and characteristics called for a substantial variance from the advisory Guidelines range. For those reasons set out at length above, this determination, unsupported by the record, amounts to an abuse of discretion.[13]

---

[13]Given our conclusion that the sentence imposed by the district court is not based on a simple disagreement with the policies underlying § 4B1.1, as opposed to something about Friedman's personal characteristics or history, this court need not delve into a difficult antecedent question: how this court should review district court sentences based simply on a policy disagreement with the Guidelines. In *Kimbrough v. United States*, the question presented was whether "a sentence . . . outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses." 128 S. Ct. 558, 564 (2007) (quotation omitted). In response, the Court held that, "under *Booker*, the cocaine Guidelines, like all other Guidelines, are advisory only." *Id.* Although a sentencing court "must include the Guidelines range in the array of factors warranting consideration," it "may determine, however, that, in the particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing" and it "may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." *Id.* Nevertheless, in so holding, the Court was careful to note that "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case." *Id.* at 575 (quotation omitted). It concluded it did not need to definitively resolve that question, however, because the crack "Guidelines do not exemplify the Commission's exercise of its characteristic institutional role" of taking into account empirical data and national experience. *Id.*; *see also Spears v. United States*, No. 08-5721, 2009 WL 129044, at *2 (Jan. 21, 2009) (noting this distinction in *Kimbrough*). The same certainly cannot be said of the career offender provisions of the Guidelines. In contrast to the crack Guidelines, which were not adopted at the express direction of Congress, *Kimbrough*, 128 S. Ct. at 570-71, Congress did explicitly direct the Sentencing Commission to

(continued...)

Finally, Friedman asserts the sentence imposed by the district court is based on treatment and rehabilitation and the district court's decision that rehabilitation outweighs the other § 3553(a) factors is entitled to deference. Once again, the problem with this argument is that it finds no support in the record. Although the main focus of the sentencing hearing was on Friedman's long-term institutionalization and the question whether he even desired to be free from prison, there was no discussion of how the fifty-seven month sentence imposed by the district court would advance Friedman's rehabilitation or open avenues of treatment foreclosed by a longer sentence. There was no discussion of programs available to Friedman which could take the place of long-term incarceration and/or minimize the likelihood of further recidivism on the part of Friedman. Indeed, the district court specifically told Friedman it was unrealistic for Friedman to expect prison officials to develop a program specifically for him. As this court noted above, although the government did not lodge a challenge to the procedural reasonableness of the district court's sentence, the very limited nature

[13](...continued)
incorporate into the Guidelines, for career offenders convicted of violent crimes, sentencing ranges that are "at or near the maximum term authorized." 28 U.S.C. § 994(h); *see also Kimbrough*, 128 S. Ct. at 571 (distinguishing congressional silence regarding the appropriate sentencing ratio for crack and powder cocaine with the express direction by Congress in § 994(h) that career violent offenders receive a sentence near the statutory maximum); U.S.S.G. § 4B1.1 background (noting the Sentencing Commission has exercised its traditional role of refining the definition of career offender over time "to focus more precisely on the class of recidivist offenders for whom a lengthy term of imprisonment is appropriate" in an effort to avoid unwarranted sentencing disparities).

of the record and the paucity of reasoning on the part of the district court most certainly bear on our review of the substantive reasonableness of Friedman's sentence.

## IV. CONCLUSION

This court is well aware that district courts enjoy a strong institutional advantage in arriving at sentencing decisions, *Gall*, 128 S. Ct. at 597, and that those decisions are therefore entitled to substantial deference, *Sells*, 541 F.3d at 1237. Nevertheless, upon a close review of the exceedingly limited record, this court is convinced the district court abused its broad discretion in significantly varying downward from the advisory Guidelines range to sentence Friedman as if he were not a career offender. The only thing the record in this case reveals is that Friedman has an extraordinary record as a recidivist bank robber and general criminal. There is simply nothing in the record to justify treating Friedman as anything other than a career offender. *See id.* (holding that "a major [variance] should be supported by a more significant justification than a minor one"). Accordingly, this court must **REVERSE** the sentence imposed by the district court and **REMAND** the matter to the district court for further proceedings consistent with this opinion.