FILED
United States Court of Appeals
Tenth Circuit

April 28, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EMILIO SANCHEZ-BELTRAN,

Defendant - Appellant.

No. 13-6140
(D.C. No. 5:13-CR-00027-C-1)
W.D. Oklahoma

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this court has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Accordingly, we

grant the parties' requests and order the case submitted without oral argument.

Emilio Sanchez-Beltran pleaded guilty to a single count of distributing fifty

grams or more of a mixture or substance containing methamphetamine, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The district court sentenced

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Sanchez-Beltran to a term of 108 months' imprisonment, the bottom of the range set out in the advisory United States Sentencing Guidelines. Sanchez-Beltran appeals, asserting the sentence imposed by the district court is substantively unreasonable. This court exercises jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and **affirms** the sentence imposed by the district court.

In December of 2012, agents of the Drug Enforcement Agency ("DEA") learned from a confidential source ("CS") that Sanchez-Beltran was in the business of distributing methamphetamine for $1000 an ounce. Acting at the instruction of the DEA agents, the CS called Sanchez-Beltran and attempted to purchase two ounces of methamphetamine. Sanchez-Beltran told the CS he had to contact his methamphetamine source, but that he was expecting a shipment from California. When Sanchez-Beltran did not contact the CS to follow up on the drug deal, the agents told the CS to go to Sanchez-Beltran's residence. When the CS arrived, Sanchez-Beltran got into his car and said he would contact his local methamphetamine supplier. When a silver vehicle arrived at the residence, Sanchez-Beltran entered the vehicle and exited it a few minutes later. Sanchez-Beltran then reentered the CS's car and completed the drug transaction. After the transaction, agents met with the CS to conduct a debriefing. Inside the center console of the CS's car, agents located eighty-nine gross grams of methamphetamine which the CS purchased from Sanchez-Beltran for $2000.

Laboratory testing revealed the net weight of 100% pure methamphetamine was 55.8 grams.

A grand jury handed down an indictment charging Sanchez-Beltran with one count of distributing fifty grams or more of methamphetamine. Sanchez-Beltran pleaded guilty to "knowingly distribut[ing] 2 ounces of a substance containing methamphetamine to another person." In response to Sanchez-Beltran's guilty plea, the United States Probation Office prepared a presentence investigation report ("PSR"). Based on the drug transaction between Sanchez-Beltran and the CS involving 55.8 grams of 100% pure methamphetamine, the PSR assigned Sanchez-Beltran a base offense level of thirty-two. U.S.S.G. § 2D1.1(c)(4) (drug quantity table). After a three-level reduction for acceptance of responsibility, *id.* § 3E1.1, Sanchez-Beltran's total offense level was twenty-nine. Sanchez-Beltran had a total of four criminal history points, two points stemming from a 2012 guilty plea to Illegal Presence by an Alien in the United States and two additional points because he was under supervised release when he committed the instant offense. *Id.* § 4A1.1(b), (d). The four criminal history points resulted in a criminal history category of III. *Id.* ch. 5, pt. A (sentencing table). A total offense level of twenty-nine combined with a criminal history category of III yields an advisory guideline range of 108 to 135 months' imprisonment. *Id.*

On May 29, 2013, the district court held a sentencing hearing. During that hearing, the district court first addressed the revocation of Sanchez-Beltran's existing term of supervised release (i.e., the term of supervised release he was then serving on his conviction for being illegally present in the United States). Based on Sanchez-Beltran's stipulation, the district court found he had violated the terms of his supervised release. Turning to sentencing, Sanchez-Beltran asked the district court to impose a total sentence of sixty months' imprisonment, the statutory minimum on the drug distribution conviction.[1] In response, the government asked the district court to revoke Sanchez-Beltran's supervised release and impose a consecutive, within- guideline sentence for Sanchez-Beltran's § 841(a) conviction. After considering the advisory guideline range, the arguments of counsel for both parties, and the § 3553(a) factors, the district court sentenced Sanchez-Beltran as follows:

---

[1]In essence, Sanchez-Beltran was asking for two different types of variances. First, Sanchez-Beltran asked the district court to vary downward from the bottom of the advisory guidelines range, 108 months' imprisonment, and impose a sentence of sixty months' imprisonment, the minimum sentence allowed under 21 U.S.C. § 841(b)(1)(B). Second, he asked the district court to disregard those portions of the advisory guidelines providing that when a defendant has an undischarged term of imprisonment resulting from the revocation of supervised release the Sentencing Commission "recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation." U.S.S.G. § 5G1.3 cmt. n.3(C); *see also id.* § 7B1.3(f) ("Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release.").

[W]hat [Sanchez-Beltran] did here involved a large amount of drugs at a high level of purity.

I agree that he is not the ongoing, long-running, drug-dealing, profit-making defendant that we often see in methamphetamine cases, but that doesn't take from what we do see with Mr. Sanchez, and that is a high volume, a high purity, and taking advantage of a situation.

There is certainly a need to protect the public and to serve as an example and to show the seriousness of this offense. I think that because of that, a sentence within the guideline range is appropriate. It's not greater than necessary to satisfy the purposes of a sentencing set out at 3553(a).

I think this, in part, because I'm going to give Mr. Sanchez a break in some other areas of sentencing. While the statute requires that supervised release be imposed in a drug trafficking crime, I see no purpose to be served in imposing supervised release when Mr. Sanchez will be deported immediately upon his release from prison.

I also am not going to run his revocation term consecutive but rather concurrent, which also offers another break in this sentencing.

So while I am in agreement that Mr. Sanchez is not—does not justify the worst that I can give him and does justify some breaks in other areas, I think that the term of imprisonment defined by the guidelines is necessary to satisfy the goals of sentencing set out in the statute.

It is for this reason that I sentence Mr. Sanchez to the custody of the Bureau of Prisons for a term of 108 months.

This term—I also sentence him to a term of 12 months on the . . . the revocation sentence. . . . Both terms will be served concurrently.

Sanchez-Beltran thereafter filed a timely notice of appeal.

-5-

"After the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), this court reviews sentences for reasonableness." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009). "Reasonableness review is a two-step process comprising a procedural and a substantive component." *Id.* (quotation omitted). Sanchez-Beltran limits his appellate challenge to the substantive reasonableness of the sentence imposed by the district court. "Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quotation omitted). This court reviews the substantive reasonableness of a sentence under an abuse-of-discretion standard. *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). A sentence is substantively unreasonable only if the district court "exceeded the bounds of permissible choice, given the facts and the applicable law in the case at hand." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (quotation omitted). That is, "[a] district court abuses [its] discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008) (quotation omitted).

> [G]iven the district court's institutional advantage over [this court's] ability to determine whether the facts of an individual case justify a variance pursuant to § 3553(a) (given that the sentencing judge, for example, sees and hears the evidence, makes credibility determinations, and actually crafts Guidelines sentences day after day), we generally defer to its decision to grant, or not grant, a variance based upon its balancing of the § 3553(a) factors.

*Id.* Where, as here, the sentence imposed by the district court is within the properly calculated guideline range, there is a presumption of reasonableness. *Id.* This presumption can be rebutted if the defendant shows the sentence imposed is unreasonable in light of the factors set forth at 18 U.S.C. § 3553(a). *Id.*

On appeal, Sanchez-Beltran asserts the sentence imposed by the district court on the drug-distribution conviction is unreasonably long. Having reviewed the parties' briefs and submissions, this court concludes Sanchez-Beltran has not come close to overcoming the presumption of reasonableness that attaches to the district court's within-guidelines-range sentence. Although he attempts to paint himself as a mere small-time criminal who simply took advantage of an opportunity offered him by the CS, the record reveals otherwise. The PSR, to which Sanchez-Beltran did not object, reveals Sanchez-Beltran was the target of a DEA investigation.[2] The investigation revealed that Sanchez-Beltran, operating under the moniker "El Muerto[,]" "distributed methamphetamine, cocaine, and marijuana in the Oklahoma City metro area." Sanchez-Beltran told the CS "he sold ounce quantities [of methamphetamine] for $1,000.00." He also told the CS "he was expecting a shipment of methamphetamine from California, and he also expected to receive a shipment of cocaine from Arizona." During the

---

[2]*See United States v. Wolfe*, 435 F.3d 1289, 1299 (10th Cir. 2006) ("We . . . accept the unobjected-to facts in the PSR as admitted for sentencing purposes . . . .").

methamphetamine transaction, Sanchez-Beltran agreed to sell the CS two-and-one-half pounds of methamphetamine for $13,500.00 per pound. This information is corroborated by the fact Sanchez-Beltran had access to, and provided to the CS, exceptionally pure methamphetamine.

Given this record, the district court could readily and reasonably conclude the need to protect the public from future criminality outweighed any factors identified by Sanchez-Beltran as warranting a below-guidelines sentence. That being the case, the sentence imposed by the district court is substantively reasonable. The 108- month sentence of imprisonment imposed by the district court upon Sanchez-Beltran is, therefore, **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge