**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————————

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

KAYODE DOBOSU,

　　Defendant - Appellant.

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

No. 21-1236
(D.C. No. 1:15-CR-00345-PAB-1)
(D. Colo.)

———————————————————

**ORDER AND JUDGMENT**[*]

———————————————————

Before **HARTZ**, **BACHARACH**, and **EID**, Circuit Judges.

———————————————————

　　In 2012, Kayode Dobosu pleaded guilty in federal court to failing to properly register as a sex offender. A special condition of his supervised release required him to participate in a treatment program for sex offenders. After Dobosu broke his program's rules, he was dismissed. That violated Dobosu's supervised release, so the district court revoked it and imposed five more years of supervised release. Having sought only two years of supervised release, Dobosu appeals the sentence imposed as substantively unreasonable. We affirm because, considering the totality of the circumstances, the district court's sentence was not an abuse of discretion.

———————————————————

　　[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.

Earl Sylvester Banks, Jr. was born in Ohio in 1973 and removed from his biological parents when he was around five years old.  Along with his siblings, he entered foster care.  A few years later, Kodzo Dobosu[1] adopted Banks, legally changed Banks's name to Kayode Adio Bem Dobosu, and brought him to the Harlem brownstone where Kodzo made his home.  Kodzo adopted dozens more children over the years and was named "Father of the Year" by a private group in 1983.

In 1991, most of the children were removed from Kodzo's home following allegations of sexual molestation and physical abuse.  Dobosu had been sexually abused by several adoptive older brothers from the time Kodzo adopted him until leaving the home in his early twenties.  After Kodzo was indicted, Dobosu and a few of the other older boys remained in the house under child-welfare workers' supervision.  Today, Dobosu is forty-nine years old and has post-traumatic stress disorder, bipolar disorder, and cognitive impairments that render him adolescent-like.

In 1997, when he was twenty-four, Dobosu forcibly penetrated the vagina and anus of a nine-year-old girl who lived in his apartment building and was convicted in New York state court of attempted sexual abuse in the first degree.  While recognizing the severity of his conduct, Dobosu notes that as of 2022 this remains his "only charge or conviction for a hands-on sexual offense."  Aplt. Br. at 4.  For it, he received three years in prison and a lifetime sex offender registration requirement.

---

[1] In the record, Dobosu's adoptive father's name is sometimes spelled "Kodzo," and sometimes spelled "Kodozo."  We use the former spelling in this order.

In 2003, Dobosu moved from New York to Colorado, where he registered as a sex offender and provided authorities with a Denver address. In 2005, he pleaded guilty in Colorado state court to failing to properly register as a sex offender. Dobosu was sentenced to five years of intensive supervision but had his probation revoked several times until completing the sentence in 2010. Dobosu's state nonregistration conviction is not directly implicated in this appeal.

In mid-2011, Dobosu's sex offender registration placed him in Littleton, Colorado. However, police officers checking whether his registered address was accurate learned from the landlord that he had been gone for over a year. A Colorado state court issued a warrant and law enforcement tracked Dobosu to New York City, where he had been receiving welfare benefits through a Bronx address. Indicted in the Southern District of New York shortly thereafter, Dobosu pleaded guilty to a violation of the federal Sex Offender Registration and Notification Act (SORNA) in 2012. *See* 18 U.S.C. § 2250. The court sentenced Dobosu to a year and a day in prison and five years of supervised release. One of the special conditions of supervised release—the sex-offender-treatment condition—required Dobosu to participate in an approved sex-offender-treatment-program, and "abide by all [its] rules, requirements, and conditions." Supp. R. Vol. I at 14. Dobosu's federal nonregistration conviction forms the basis for the revocation sentence we review.

Dobosu's federal supervised release was revoked twice before the revocation at issue here. First, in June 2015, after Dobosu failed to report to probation, the district court sentenced him to a revocation term of thirty days' imprisonment

3

followed by five years' supervised release. The district court reimposed the sex-offender-treatment condition. Then, in August 2015, Dobosu's case was transferred to the District of Colorado. Dobosu's supervised release was next revoked in July 2016 for falsifying written reports, failing to report an address change, and violating the sex-offender-treatment condition. The district court sentenced Dobosu to a revocation term of five months' imprisonment and five years' supervised release. Again, Dobosu's supervised release included the sex-offender-treatment condition.[2]

In August 2020, the United States Probation officers assigned to Dobosu submitted a petition before the district court alleging that Dobosu violated his supervised release by breaking the rules of his sex-offender-treatment program and improperly accessing the internet. A few months later, Probation submitted a superseding petition limited to Dobosu's violation of the policies set by his sex-offender-treatment provider, RSA, Inc. Probation recounted how Dobosu had been "unsuccessfully discharged" from RSA in August 2020, a Grade C supervised-release violation. R. Vol. I at 15.

According to the superseding petition, Dobosu entered RSA's treatment program in January 2017, agreeing to all of RSA's treatment terms. Probation informed the district court that Dobosu had committed several violations of those

---

[2] This condition technically used different language, but we continue to call it the sex-offender-treatment condition because, like the Southern District of New York condition, it required Dobosu to "participate in and successfully complete an approved program of sex offender evaluation and treatment," and "comply with the rules and restrictions specified by the treatment agency." Supp. R. Vol. I at 6.

terms, including: (1) visiting, with his non-RSA day group, locations that were off-limits under RSA's rules because they are frequented by children;[3] (2) sending, receiving, and concealing sexually explicit text messages, including sexually explicit photographs; (3) using unapproved internet-capable devices; (4) "having a pattern of secret keeping and dishonesty with his Community Supervision Team"; and (5) "plann[ing] to meet with unknown men at unapproved locations." *Id.* at 15–16. By violating RSA's terms and getting dismissed from RSA's treatment program, Dobosu in turn violated the sex-offender-treatment condition of his supervised release.  Probation recommended that Dobosu's supervised release be revoked for a third time and that Dobosu receive another five years of supervised release.  In Probation's view, the additional supervised release would have a deterrent effect and help Dobosu complete the treatment.  Probation noted that treatment was imperative because recent testing suggested that Dobosu remained sexually attracted to children.

The district court held a revocation hearing in June 2021, where Dobosu admitted to the violation alleged in the superseding petition.  Dobosu and the government agreed that incarceration was not warranted—even though the Guidelines range was between five and eleven months' imprisonment.  But the

---

[3] These "unapproved locations" included the Boondocks Fun Center, the Denver Zoo, and the Downtown Aquarium.  R. Vol. I at 16.  In response, RSA placed Dobosu on a Low Therapeutic Intervention Contract, a remedial program he completed in June 2020.  R. Vol. I at 17.  Dobosu describes the visits as unintentional oversights caused by miscommunication between his care providers, day group, and RSA.  *See* Aplt. Br. at 19–20.  In the government's view, RSA's expectations were made clear to Dobosu.  *See* Aple. Br. at 16.

parties disagreed about how much supervised release should be imposed. Dobosu

sought two years. The government asked for five years. The district court revoked

Dobosu's supervised release and imposed a custodial sentence of time served, plus

the government's requested five years of supervised release. The court reasoned:

> If you look over the defendant's history, one thing that seems to be quite clear is that—and perhaps this is a product of some of the limitations in cognition that the defendant may have, but he's had many different allegations that he has failed to register as a sex offender. Moreover, just based upon the violation that he has admitted to today, that demonstrates also to me at least that he is going to continue to need close supervision in order to make sure that he does not pose a risk to the community.
>
> And while we all hope and expect that he will be able to successfully complete the RSA program, even if he does, I think that supervision is going to be necessary. And I believe that the circumstances of this particular offense combined with his past history of failing to register and, of course, taking into account his underlying New York state offense, that it is appropriate that the Court impose a period of five years of supervision.

R. Vol. IV at 35. Dobosu appealed.

## II.

"In considering whether a defendant's sentence is substantively reasonable, we

examine 'whether the length of the sentence is reasonable given all the circumstances

of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'" *United States v.*

*Chavez*, 723 F.3d 1226, 1233 (10th Cir. 2013) (quoting *United States v. Reyes-*

*Alfonso*, 653 F.3d 1137, 1145 (10th Cir. 2011)). "As a general matter, 'it is not the

role of an appellate court to substitute its judgment for that of the sentencing court as

to the appropriateness of a particular sentence.'" *Concepcion v. United States*,

No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022) (quoting *Solem v. Helm*, 463 U.S. 277, 290 n.16 (1983)).

"We review a district court's sentencing decision for substantive reasonableness under an abuse-of-discretion standard, looking at the 'totality of the circumstances.'" *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019) (quoting *United States v. Balbin-Mesa*, 643 F.3d 783, 787 (10th Cir. 2011)). "Under this standard, we will not reverse unless the trial court has made an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Burke v. Regalado*, 935 F.3d 960, 1052 (10th Cir. 2019) (quoting *United States v. Wells*, 873 F.3d 1241, 1250 (10th Cir. 2017)). That we might have sentenced Dobosu differently in the first instance is not enough to support reversal. *See United States v. Friedman*, 554 F.3d 1301, 1307–08 (10th Cir. 2009). The question is, instead, whether the district court's sentencing decision "exceed[ed] the bounds of permissible choice." *Chavez*, 723 F.3d at 1233 (quoting *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007)).

## III.

On appeal, Dobosu makes several arguments that his five-year term of supervised release was excessive. However, none is sufficient to overcome our deferential standard of review, which is grounded in the "established tradition of district courts' sentencing discretion." *Concepcion*, 2022 WL 2295029, at *9.

**a.**

Dobosu points out that his violation conduct—dismissal from RSA for the reasons summarized above—posed no risk to minors, and he emphasizes that he has not engaged in any sexual misconduct since his release from custody on the New York state offense over twenty years ago.  Even if he still has a sexual interest in minors, he argues that he has not acted on any such interest and the treatment required by his supervised release is designed to address it.  Dobosu contends that finishing RSA's treatment program would only take two years, he is better positioned to complete it than before, and the district court took the position that Dobosu would complete it.  Dobosu adds that his failure to register as a sex offender in the past does not support the district court's sentence, as he has not had a nonregistration problem in several years.  Dobosu suggests that, considering these mitigating circumstances, five more years of supervised release (bringing the total up to thirteen years) is substantively unreasonable when compared to the identical five years of supervised release he received for the original SORNA offense.

The government responds that the district court considered all of Dobosu's points but "found them to be outweighed by the nature and circumstances of Dobosu's original child sex offense, his history of failing to register as a sex offender, and the dangers to the community posed by his continued failures to complete the sex offender treatment required by his release conditions."  Aple. Br. at 12.  The government observes that the district court expressed concerns about Dobosu's recidivism risk, notwithstanding the treatment program.  What matters, in

the government's view, is that the five-year term was a reasonable determination under the sentencing factors, within the bounds set by law, so it was not an abuse of discretion.

In reply, Dobosu stresses that the underlying offense conduct is remote in time and that, whatever concerns the district court had about community risk, it should have given greater weight to the fact that Dobosu has a full-time caretaker. Dobosu suggests that the government twisted the district court's words to make the sentence look more reasonable than it is. He sums up his argument as follows: "[t]he length of the term of supervised release is manifestly unreasonable on the facts here, where there is no indication Mr. Dobosu has engaged in any sexual miscondu[c]t since 1997, the district court believed he would complete sex-offender treatment and he has a full-time, live-in caregiver." Reply Br. at 10.

**b.**

On this record, the standard of review essentially decides the case. Dobosu provides several reasons that a shorter sentence might be appropriate under the sentencing factors, but, as the government points out, the district court found his arguments outweighed under the circumstances. That was a reasoned exercise of discretion that we cannot disturb on appeal without far more than what Dobosu provides.

It is true that Dobosu's only sexual misconduct offense ended decades ago and that his supervised-release violation was not alleged to involve nonconsensual or illicit sexual behavior that threatened children. It is also true that Dobosu has not had

9

a nonregistration conviction or related issue in several years. But—equally true and dispositively—the district court took all that into account. It also took into account its view of Dobosu's history and treatment trajectory, as well as his living situation and potential community risk. In short, it applied the sentencing factors to Dobosu's circumstances and explained why it thought five years of supervised release was appropriate. The totality of the circumstances do not suggest that decision was substantively unreasonable. *See Cookson*, 922 F.3d at 1090.

On appeal, we have no solid basis for finding Dobosu's five-year term of supervised release substantively unreasonable, nor, critically, does Dobosu provide us with any cases striking down similar sentences. After all, Dobosu's sentence was itself the product of a sizable downward departure from the Guidelines range of five to eleven months in custody. Instead of additional imprisonment, the district court imposed a sentence consisting of solely time served and supervised release. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (on substantive reasonableness review, an "appellate court may, but is not required to, apply a presumption of reasonableness" to sentences within the Guidelines range). Also relevant is that Dobosu's argument is not that supervised release is a categorically unreasonable sentence for a minor violation. Rather, Dobosu's position is that the district court should have imposed only two years, as opposed to five years, of supervised release. While there were certainly reasons to impose a two-year sentence—reasons that could convince a reasonable sentencing judge—there was a reasonable alternative path to the sentence the court below imposed. Affirmance is therefore required on our deferential review

10

because there is simply not a right answer when it comes to this corner of the discretionary sentencing context: getting the law and facts correct as inputs and coming up with a reasonable sentence as an output. Finding an abuse of discretion here would treat sentencing as the very "exact science" it is not. *See United States v. Mejia-Orosco*, 868 F.2d 807, 808 (5th Cir. 1989) (per curiam). The court below arrived at a reasoned conclusion that five more years of supervised release was appropriate in Dobosu's case, and that decision fell within the bounds of permissible choice. *See Chavez*, 723 F.3d at 1233.

It is not our role to disagree with a district court's reasoned sentencing determination, and nothing in this case suggests the court's reasoning was arbitrary, capricious, whimsical, or manifestly unreasonable. *See Burke*, 935 F.3d at 1052. Far from it, the district court's sentence was rooted in the record. The difference between the two years of supervised release Dobosu requested and the five years of supervised release imposed does not amount to an abuse of discretion. It is clear that the district court's significant downward departure to a five-year term of supervised release, which was based upon the court's thorough consideration of Dobosu's circumstances, was not a substantively unreasonable sentence.

**IV.**

We AFFIRM Dobosu's sentence.

Entered for the Court


Allison H. Eid
Circuit Judge