FILED
United States Court of Appeals
Tenth Circuit

May 5, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RUSSELL DEAN LANDERS,

Defendant-Appellant.

No. 08-6105

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. CR-07-154-D)**

---

J. Lance Hopkins, Tahlequah, Oklahoma, for Appellant.

Scott E. Williams, Assistant United States Attorney (John C. Richter, United States Attorney, with him on the brief) Office of the United States Attorney, Oklahoma City, Oklahoma, for Appellee.

---

Before **LUCERO**, **McWILLIAMS**, and **TYMKOVICH**, Circuit Judges.

---

**TYMKOVICH**, Circuit Judge.

---

In an attempt to gain release from federal prison, Russell Dean Landers coordinated a scheme to extort the prison's warden and other federal officials by placing liens on their property. Instead of gaining release, though, Landers

gained only jury convictions—one for mailing threatening communications, and another for conspiring to impede federal officials in the performance of their duties. *See* 18 U.S.C. §§ 372, 876.

In this appeal, Landers argues the district court erred by (1) declining to initiate proceedings to determine his competency to stand trial, (2) refusing to allow him to employ an expert witness for purposes of a psychological evaluation, and (3) imposing a sentence twelve months above the applicable guideline range.

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we AFFIRM.

## I. Background

Landers has a history of involvement with the Montana Freemen, a self-described militia rejecting the authority of the federal government. When he committed the acts relevant to this appeal, Landers was serving a 30-year sentence for crimes committed while a member of this organization.

In 2003, Landers and several fellow inmates hatched an escape plan. The plan involved Landers "copyrighting" his name and invoicing the warden $10 million for its "unauthorized" use. When the warden failed to pay, Landers would file liens on the warden's real and personal property. After seizing the property, Landers would be positioned to negotiate or extort his release from prison. Landers's plan was not particularly original, as filing fraudulent liens against

public officials was one of the Montana Freemen crimes that landed him in federal prison in the first place.

Nor was Landers's plan unique. A number of other prisoners across the country had hatched the same plan, inspired—like Landers—by an anti-government tract called *Cracking the Code*.[1]

Landers could not implement his plan without assistance from outside prison, and he enlisted accomplices. Unfortunately for Landers, one of the individuals he recruited to file the collection paperwork was actually an undercover FBI agent. The agent had telephone conversations with Landers that the district court later relied upon in making its competency determination.

---

[1] *Cracking the Code* claims

> the government has no power over people who cho[o]se to ignore [it] and encourages individuals to flout and intimidate authority. This book instructs its readers on the "redemption" theory. "Redemption" is an anti-government scheme that utilizes commercial law to harass and terrorize its targets. . . . According to the theory, the convict has a split personality: a real person and a fictional person called a "strawman." The strawman came into being when the United States went off the gold standard in 1933 and pledged its citizens as collateral for its national debt. Proponents of the theory believe that the government only has power over the strawman and not the real person. The real person, however, can "redeem" the fictional person by filing a UCC financing statement. This allows the real person to acquire an interest in the fictional person that trumps the government's power. Redemption theorists believe that the government must pay the real person millions of dollars to use the strawman's name or keep him in custody. If the official refuses to pay, the real person can file a lien.

*Monroe v. Beard*, No. 05-04937, 2007 WL 2359833, at *2 (E.D. Pa. 2007) (unpublished).

During pre-trial, trial, and sentencing proceedings, Landers exhibited odd and disruptive behavior. On occasion, this behavior necessitated his physical removal from the courtroom. He made a number of unusual pro se filings, and refused to cooperate with or assist his appointed counsel. In light of Landers's pre-trial behavior, the district court—on its own motion—scheduled a hearing to assess whether it should initiate proceedings to determine Landers's mental competency to stand trial.

At that hearing, the district court decided against formal competency proceedings. The court did so after the prosecutor and defense counsel agreed that Landers's disruptive behavior stemmed from "his general attitude of protest" rather than any mental incompetency. Competency Hr'g Tr. at 3. The court also reviewed a letter Landers prepared in extorting the warden, as well as recorded telephone conversations between Landers and the undercover FBI agent discussing the extortion scheme. In light of the "cogent and organized thinking that Mr. Landers was capable of in the not-too-distant past," the district court declined to initiate § 4241 competency proceedings. *Id.* at 15–16.

Five weeks after the trial deadline for filing notice of a mental-defect defense and five days before trial, Landers's counsel filed an "Application for Authorization to Employ an Expert Witness." In his application, counsel affirmed Landers's competency but requested the court employ an expert to determine whether Landers had diminished mental capacity owing to a "closed belief

-4-

system."[2]  The district court denied the application, finding it squarely foreclosed by Tenth Circuit case law.  Importantly for our purposes, the court also declined to find that Landers was asserting an insanity defense.

A jury subsequently convicted Landers of conspiring to impede federal officials in the performance of their duties, a violation of 18 U.S.C. § 372, and of mailing threatening communications, a violation of 18 U.S.C. § 876.

Landers's offense conduct and criminal history category yielded a guideline range of 135 to 168 months.  The government filed a motion for an upward variance based in part on Landers's obstreperous behavior in court.  The district court granted the motion and sentenced Landers to 180 months' imprisonment.

## II.  Analysis

Landers contends the district court erred by (1) declining to initiate proceedings on its own motion to determine his competency to stand trial, (2) refusing to allow him to employ an expert witness for purposes of a pre-trial psychological evaluation, and (3) imposing a sentence twelve months above the applicable guideline range.

We affirm the district court on all three issues.

---

[2]  The prototypical "closed belief system" is one in which an individual either dramatically distorts or completely rejects any information that does not comport with certain beliefs.  *See United States v. Finley*, 301 F.3d 1000, 1011–12 (9th Cir. 2002).

**A. Refusal to Order Competency Proceedings**

A district court "shall" hold a competency proceeding "on its own motion" when "there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent." 18 U.S.C. § 4241(a). A defendant is competent to stand trial if he has "the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *see also Dusky v. United States*, 362 U.S. 402, 402 (1960). Landers argues the district court erred in declining to order a § 4241 competency proceeding in light of his bizarre behavior during court appearances, his numerous unusual pro se filings, and his refusal to communicate with counsel. We disagree.

**1. Standard of Review**

The parties agree that *United States v. Williams*, 113 F.3d 1155 (10th Cir. 1997), provides for reasonableness review in cases where, as here, "neither side moved for the trial court to hold a competency hearing." *Id.* at 1160. Under this standard, a district court declining to initiate a § 4241 competency proceeding does so erroneously if a "reasonable judge . . . should have experienced doubt with respect to [the defendant's] competency to stand trial." *Id.* (quoting *United States v. Crews*, 781 F.2d 826, 833 (10th Cir. 1986) (per curiam)).

## 2. Failure to Order § 4241 Competency Proceedings

Given the circumstances here, the district court did not err in declining to order a § 4241 competency proceeding. Indeed, a reasonable judge in this situation would not have doubted Landers's capacity to understand the proceedings, consult with counsel, or assist in preparing his defense. We base this conclusion on a number of considerations.

At the outset, neither the government nor Landers's attorney ever questioned his competency to stand trial. Indeed, the issue of competency would have gone entirely unaddressed had the district court not convened, on its own motion, a hearing about instituting formal § 4241 competency proceedings. "[J]udges must depend to some extent on counsel to bring issues into focus," *Drope*, 420 U.S. at 176–77, and Landers's trial counsel not only declined to make a competency motion but explicitly told the district court his client was competent.

Second, transcripts of telephone calls between Landers and the undercover FBI agent, along with a letter Landers wrote, show both Landers's planning ability, sophistication, and ability to manipulate. Before making its competency determination, the district court listened to some of the recorded calls and agreed they demonstrated Landers was fully capable of cogent thought and complex planning. The district court also reviewed a detailed letter Landers wrote to his co-conspirators with the identities of the victims and instructions on how to

implement the escape-by-extortion plan.  The phone transcripts and the letter suggest that despite his unruly behavior, Landers had the capacity to understand the proceedings, consult with counsel, and assist in his defense.  *See Williams*, 113 F.3d at 1159 (citing *Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993)).

Third, Landers's bizarre behavior is not idiosyncratic.  Many others who reject government authority engage in the same type of conduct.  Landers based his quasi-legal arguments on anti-government literature, which, as previously noted, instructed prisoners on how to file fraudulent liens and judgments against prison officials.  Other prisoners across the country have used the same materials.  *See, e.g.*, *Monroe v. Beard*, 536 F.3d 198 (3d Cir. 2008).  The fact that other federal prisoners have made the same statements and exhibited the same obstreperous behavior supported the district court's conclusion that Landers is an anti-government protestor rather than mentally incompetent.  This context confirmed that Landers was "merely engaged in obstructionism," and that his behavior did not raise a "genuine, reasonable doubt about [his] competency to stand trial."  *Williams*, 113 F.3d at 1160.

To support his argument, Landers points to the defendant in *Williams*.  But that case provides little support.  There, we reviewed circumstances where a defendant's behavior raised genuine doubts about her competency to stand trial.  The defendant, a woman with a long history of mental illness, exhibited "out of control" erratic behavior through her trial—including frequent "hysterical"

outbursts of uncontrollable sobbing. *Id.* at 1158–59. In contrast, Landers did not have a long history of mental illness—he did, however, have a long history of rejecting government authority. Furthermore, while Landers's courtroom behavior was disruptive, it was not hysterical or out of control. Rather, he limited his participation to scripted presentations calculated to disrupt court proceedings and to register continued protest against the federal government's authority. In concluding this was the case, the district court was perfectly reasonable.

We find the Seventh Circuit's analysis in *United States v. James*, 328 F.3d 953 (7th Cir. 2003), particularly instructive. In that case, the court found no cause to doubt the competency of a disruptive defendant who "copyrighted" his name, sent invoices to government officials who used his name, and planned to file liens against property owned by those officials. *Id.* at 954–56. In reaching this conclusion, the court observed:

> The only reason adduced, in the district court or this one, for thinking James incompetent to stand trial is the unusual nature of his beliefs. His behavior . . . is that of a person able to understand his surroundings. Many litigants articulate beliefs that have no legal support—think of tax protesters who insist that wages are not income, that taxes are voluntary, or that only foreigners must pay taxes. . . . Sometimes these beliefs are sincerely held, sometimes they are advanced only to annoy the other side, but in neither event do they imply mental instability or concrete intellect . . . so deficient that trial is impossible.

*Id.* at 955. Similarly, Landers doggedly advanced his anti-government claims, but nothing before the trial court suggested he lacked "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or "a

rational as well as factual understanding of the proceedings against him." *Dusky*,

362 U.S. at 402.

With the evidence before it, the district court reasonably determined that

there was no cause to order a competency hearing.

## B.  Psychological Expert

Landers also claims the district court erred in refusing to allow him to

employ a psychological expert prior to trial.  In his motion before the district

court seeking the appointment, Landers based his request on a plan to pursue a

closed belief system defense at trial.  But the district court properly concluded,

and Landers concedes on appeal, that Tenth Circuit case law precludes such a

defense in these circumstances.  Reply Br. at 4–5 (citing *United States v. Brown*,

326 F.3d 1143 (10th Cir. 2003)).

Recognizing the unavailability of this approach, Landers now argues that

he had *also* wanted to assert a possible insanity defense, and that the district court

erred in rejecting his request to retain a psychological expert.  This argument is

unpersuasive.

### 1.  Failure to Assert an Insanity Defense

In denying the motion to employ an expert psychological witness, the

district court noted that Landers had failed to "assert[] this affirmative defense [of

insanity or] properly provid[e] notice of it."  D. Ct. R., Doc. 99 at 4.  We review

for an abuse of discretion.  *See United States v. Rogers*, 556 F.3d 1130, 1136

-10-

(10th Cir. 2009); *United States v. Cartagena-Carrasquillo*, 70 F.3d 706, 710 (1st Cir. 1995).

Insanity is an affirmative defense, and a defendant intending to assert it must notify the government in writing. Fed. R. Crim. P. 12.2(a). A defendant who fails to do so cannot rely on the defense. *Id.*

Instead of asserting an insanity defense, Landers spent the entirety of his motion focused on the now-abandoned closed belief system defense. Indeed, the motion never once referenced insanity. Landers now asserts he was in fact requesting a "broad [mental health] evaluation" that encompassed an insanity defense. Aplt. Br. at 22. He cites the last sentence of his motion, describing the need to determine "whether Defendant does in fact have mental issues which may need further investigation." D. Ct. R., Doc. 94 at 4. The phrasing "could have been more specific," he concedes, but "it was specific enough to require the District Court to order . . . a sanity evaluation." Reply Br. at 5.

The district court did not abuse its discretion in finding that Landers never asserted an insanity defense in his motion. A defendant who requests a psychiatric expert must demonstrate clearly and genuinely that "sanity at the time of the offense is to be a significant factor at trial." *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Landers's motion neither referenced insanity, nor did it show how insanity at the time of the offense in 2003 would likely be a significant factor at trial. The context was particularly unavailing since the district court in resolving

-11-

competency for trial had the opportunity to review Landers's writings and phone conversations with the undercover agent, which showed a high level of mental function at the time of the crime.

In short, the district court thus acted within its discretion in determining Landers failed to assert an insanity defense.

## 2. Untimely Notice

Even if we were to construe Landers's motion as adequately asserting an insanity defense, we would still affirm the district court's denial on account of the motion's untimeliness.

The denial of a request to employ an expert because of untimeliness is also reviewed for an abuse of discretion. *United States v. Diaz*, 189 F.3d 1239, 1247 (10th Cir. 1999). A defendant intending to assert an insanity defense must generally notify the government within the time provided for filing a pretrial motion. Fed. R. Crim. P. 12.2(a). A defendant failing to do so cannot rely on an insanity defense. *Id.* Counsel concedes that the application to employ the witness "could have been more . . . timely," but that it "was still filed 27 days before trial testimony." Reply Br. at 5.

The district court did not abuse its discretion in finding that "the timeliness of Defendant's request also militates in favor of denial." D. Ct. R., Doc. 99 at 4. As the court noted, Landers's application was not filed until five weeks after

pretrial motions were due—i.e., the deadline for filing notice of a mental-defect defense—and five days before trial.

## C. Landers's Sentence

In his final argument, Landers asserts the district court's twelve-month upward variance from the high end of his applicable guideline range (135 to 168 months) was substantively unreasonable. The 180-month sentence, he points out, would leave him imprisoned until he is 98 years old. Furthermore, he argues, the guideline offense level already accounts for all of the relevant punitive aspects in his case. Because of this, the district court's additional twelve-month variance was "unfairly punitive" and "useless 'piling on.'" Aplt. Br. at 34.

The relevant standard of review is for abuse of discretion, which requires that we give "substantial deference" to the district court's sentence. *United States v. Sells*, 541 F.3d 1227, 1237 (10th Cir. 2008). This deferential standard also applies where, like here, the district court imposes a sentence outside the guideline range. *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008).

A district court abuses its discretion when it renders a judgment that is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation omitted). Far from being arbitrary, capricious, or whimsical, the district court carefully and methodically explained why the 18 U.S.C. § 3553(a) factors, on the whole, justified the twelve-month variance. In essence, the court concluded that

-13-

Landers's offenses "strike at the heart of the criminal justice system" and that his conduct "reflects an utter disdain for the law and criminal justice system." Sentencing Tr. at 337.

Because the district court "consider[ed] the extent of the deviation and ensure[d] that the justification [was] sufficiently compelling to support the degree of variance," *United States v. Gall*, 128 S. Ct. 586, 597 (2007), it did not abuse its discretion and Landers's 180-month sentence was substantively reasonable.

### III. Conclusion

For the foregoing reasons, we AFFIRM the district court.