FILED
United States Court of Appeals
Tenth Circuit

June 18, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

CHARLIE TOM, JR.,

      Defendant - Appellee.

No. 08-2175
(D.C. No. 02-CR-02277)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **HARTZ**, Circuit Judges.

Defendant-Appellee Charlie Tom, Jr., was convicted by a jury of second-degree murder on April 21, 2005, and was sentenced to 70 months' imprisonment and three years' supervised release. I Aplt. App. 55, 71-73. The government appealed Mr. Tom's sentence, arguing that the sentence was procedurally unreasonable because the district court utilized the wrong Guidelines range and was substantively unreasonable because the district court granted a fifty-eight percent variance from the bottom of the proper Guidelines range. United States v.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Tom, 494 F.3d 1277, 1279-80 (10th Cir. 2007). We reversed and remanded, reaching only the procedural reasonableness challenge, although we did comment that it was unlikely that the district court's rationale for the variance could be upheld under our precedents. Id. at 1282 n.3. Subsequently, the Supreme Court decided Gall v. United States, 128 S. Ct. 586 (2007), which significantly changed our review of sentencing decisions. United States v. Smart, 518 F.3d 800, 805-09 (10th Cir. 2008). On remand, the district court imposed the identical sentence. I Aplt. App. 177-79. This appeal on substantive reasonableness grounds followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), and affirm.

Background

Mr. Tom was charged with the unlawful killing of a newborn infant in violation of 18 U.S.C. §§ 1111 and 1153. Also involved was his girlfriend (H.B.) who pled guilty and received 44 months' probation in juvenile proceedings. II Aplt. App. 235. Mr. Tom elected to stand trial and was convicted by a jury of the lesser-included offense of second-degree murder. I Aplt. App. 55. The Presentence Report (PSR) identified a total offense level of thirty-three, applying a two-level downward adjustment for acceptance of responsibility. II Aplt. App. 192-93. The district court accepted the PSR, including the adjustment, and identified a Sentencing Guidelines range of 135 to 168 months. The district court

then varied downward (essentially by six levels[1]) and sentenced Mr. Tom to 70 months' imprisonment and three years' supervised release. Tom, 494 F.3d at 1279; I Aplt. App. 69, 71-73; II Aplt. App. 238. On appeal, we determined that the two-level reduction for acceptance of responsibility was unwarranted; this meant that the Guidelines range, on which the variance was necessarily based, was incorrect. Tom, 494 F.3d at 1281-82. In imposing the identical sentence on remand, the district court utilized the correct (and higher) Guidelines range, but still concluded that "a sentence of 70 months under the unique circumstances of this case is 'sufficient, but not greater than necessary' to comply with Section 3553(a)(2) sentencing goals."[2] II Aplt. App. 249 (quoting 18 U.S.C. § 3553(a)). The government renews its challenge to the substantive reasonableness of the sentence, arguing that the sentence is unreasonable based upon the totality of the circumstances, the extent of the variance, and the failure of the sentence to reflect the seriousness of the offense. We address below only the facts necessary for this order and judgment.

Discussion

Following United States v. Booker, 543 U.S. 220 (2005), this court reviews

[1] The Guidelines range for an offense level of 27 with a criminal history category of I is 70-87 months. U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

[2] Thus, the district court essentially varied by eight levels, from a Guideline range of 35 (168-210 months) to one of 27 (70-87 months).

sentences for reasonableness. United States v. Friedman, 554 F.3d 1301, 1307 (10th Cir. 2009). Reasonableness review requires a two-step process, involving both the procedural and substantive reasonableness of a sentence. United States v. Verdin-Garcia, 516 F.3d 884, 895 (10th Cir. 2008). Although not at issue in this case, review for procedural reasonableness addresses whether the sentencing judge properly calculated the Guidelines range, considered the § 3553(a) factors, and adequately explained its sentence. Id. at 895. "Review for substantive reasonableness focuses on whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." Friedman, 554 F.3d at 1307 (internal quotation marks omitted).

We review the sentence imposed by the district court for an abuse of discretion, granting "substantial deference" to the court's determination. United States v. Landers, 564 F.3d 1217, 1224 (10th Cir. 2009); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008); see also Gall, 128 S. Ct. at 594. A district court abuses its discretion when it "renders a judgment that is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" United States v. Munoz-Nava, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting United States v. Byrne, 171 F.3d 1231, 1235 (10th Cir. 1999)). This same standard applies to sentences that fall outside the calculated Guidelines range; however, we may not apply a presumption of unreasonableness to a non-Guidelines sentence. Landers, 564 F.3d at 1224; Munoz-Nava, 524 F.3d at 1146 (citing Gall, 128 S. Ct. at 597). As

- 4 -

noted in <u>Gall</u>, we

> may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

<u>Gall</u>, 128 S. Ct. at 597. At the same time, our review recognizes the district court's responsibility to "ensure that the justification is sufficiently compelling to support the degree of the variance," and "a major departure should be supported by a more significant justification than a minor one." <u>Id.</u>

The district court addressed the factors set forth in § 3553(a) in a lengthy statement of reasons. First, the court considered the nature and circumstances of the offense and the history and characteristics of the defendant. <u>See</u> 18 U.S.C. § 3553(a)(1). The court acknowledged the "particularly serious" nature of the crime, and included in its analysis the facts that (1) H.B.'s mother had threatened to throw the couple out of her home if H.B. became pregnant; (2) Mr. Tom and H.B. were alone, "overwhelmed[,] and afraid" at the time of the birth; and (3) Mr. Tom testified that he had wanted to keep the baby and that he did not actually commit the murder, but rather only assisted by disposing the body after the fact. II Aplt. App. 249. In addition, the court noted Mr. Tom's mental capacity, finding that he is "borderline mentally retarded" and, as a result, "reacted impulsively and did what he was told to do." II Aplt. App. 249-50. The court

- 5 -

found Mr. Tom's mental deficiencies to be a "mitigating factor that significantly reduces his moral culpability and distinguishes him from those who do not suffer from similar deficiencies." II Aplt. App. 249. Specifically, the court referred to its firsthand observations of Mr. Tom's mental deficiencies throughout trial. See VII Aplt. App. 858-59 (June 26, 2008 Sent'g Tr.).[3] Finally, the court perceived Mr. Tom's youthfulness to be yet another mitigating factor. The court noted that, even though Mr. Tom had just reached age eighteen at the time of the offense, that fact "does not mean that he has necessarily attained the emotional or intellectual maturity of an adult and for this reason his moral culpability may be reduced." II Aplt. App. 250.

The district court then addressed the need for the sentence imposed to reflect the considerations set out in § 3553(a)(2)(A)-(D). The court considered the facts that the defendant has no prior criminal history and has never been incarcerated, suggesting that his 70-month sentence is "sufficient" to deter him and impress upon him the seriousness of the conduct. II Aplt. App. 250. Referring to Mr. Tom's conduct as "aberrational," arising only out of the highly unique confluence of circumstances in this case, the court did not believe Mr.

---

[3] Prior to trial, Mr. Tom underwent a psychiatric evaluation performed by Dr. Gerald Fredman. II Aplt. App. 224-34. Dr. Fredman concluded that Mr. Tom's waiver of his rights "was voluntary and knowing" but that "the waiver was not an intelligent waiver. Given his borderline intelligence and learning disorder, it is more likely than not that he did not grasp the significance of the information provided by the Miranda warnings." II Aplt. App. 234.

Tom posed a threat to the public.  II Aplt. App. 250.  The court further stated its belief that Mr. Tom could benefit from rehabilitative programs, and that a longer sentence would delay his access to those services.  II Aplt. App. 250.  Finally, the court considered the need to avoid unwarranted disparities among similarly situated defendants.  II Aplt. App. 250; see § 3553(a)(6).  Here, the court found that a sentence of 70 months would be appropriate, especially because Mr. Tom's co-defendant "received a substantially more lenient sentence of 44 months probation,  . . . even though she may be more morally blameworthy than Defendant."  II Aplt. App. 250.[4]  The district court concluded that "a sentence of 70 months is 'sufficient, but not greater than necessary' to comply with § 3553(a)(2) sentencing goals."  II Aplt. App. 250 (quoting 18 U.S.C. § 3553(a)).

We agree with the government that this is a major deviation requiring significant justification.  The properly calculated Guidelines range is 168-210 months and Mr. Tom received a sentence of approximately forty-two percent of the low end of the advisory Guideline range.  The government urges us to apply United States v. Pugh, 515 F.3d 1179, 1191-92 (11th Cir. 2008), which suggests various "symptoms" which may indicate a substantively unreasonable sentence:

---

[4] The district court sentenced Mr. Tom's co-defendant, H.B. (a minor), after she pled guilty to unlawful killing of her newborn infant son pursuant to 18 U.S.C. § 1153.  The court sentenced H.B. to probation until her twenty-first birthday.  II Aplt. App. 235-36.  The sentencing judge acknowledged at Mr. Tom's sentencing hearing: "I'm angry with myself for giving [H.B.] such a lenient sentence when I didn't know her full role in all of this . . . ."  VII Aplt. App. 847 (June 26, 2008 Sent'g Tr.).

(a) unjustified reliance on a § 3553(a) factor, (b) arbitrary selection of a sentence, (c) basing a sentence on impermissible factors, and (d) failure to consider pertinent § 3553(a) factors. The symptoms must be considered against a backdrop of the totality of the circumstances; a remand is appropriate only where the reviewing court is left with a definite and firm conviction that the district court committed a clear error in judgment in weighing the factors—in other words, the sentence under review is outside the range of reasonable sentences considering the facts of the case. Id. These factors provide a helpful reference for analyzing, and upholding, the substantive reasonableness of the district court's sentencing decision. See also United States v. Cavera, 550 F.3d 180, 191-92 (2d Cir. 2008); United States v. Pinson, 542 F.3d 822, 836-37 (10th Cir. 2008).

The government first argues that the sentence in this case constitutes an abuse of discretion because the trial court focused on Mr. Tom's history and personal characteristics, including borderline mental retardation, youth, and the aberrational nature of the offense. See U.S.S.G. § 3553(a)(1) & (a)(2)(C). Additionally, the district court specifically found that Mr. Tom was not likely to reoffend given the lack of a prior criminal record. The government maintains that the court's reliance on these factors is in tension with certain policy statements discouraging departures, and that these policy statements should have been considered under § 3553(a)(5). See U.S.S.G. § 5K2.13 (diminished capacity departure not available where circumstances of offense indicate need to protect

public given violent nature of the offense); id. § 5H1.1 (age including youth not ordinarily relevant); id. § 5K2.20 (aberrant behavior departure not available for offense involving serious bodily injury or death). The simple answer to this contention is that the general policy statements apply to departures, but the district court has a freer hand when it comes to variances and may consider these factors as part of the nature and circumstances of the offense and the history and characteristics of the defendant in fashioning a reasonable sentence consistent with the overall objectives of § 3553(a). See United States v. Davis, 537 F.3d 611, 616-17 (6th Cir. 2008). While we appreciate the importance of such policy statements, the district court could give some consideration to these factors as part of the § 3553(a)(1) analysis.

The government also argues that the court relied upon a version of the facts that was contrary to common sense, minimized culpability and was inconsistent with the jury's verdict of second degree murder. Specifically, the district court found that: (1) Mr. Tom was unaware that H.B. was pregnant until the head of the baby appeared just before birth, (2) Mr. Tom repeatedly said that he wanted to keep the baby, and (3) in response to H.B.'s insistence that they get rid of the baby, Mr. Tom brought her a knife "from the kitchen and then stood by while she cut the baby's throat." II Aplt. App. 249. By the time of trial, Mr. Tom's recounting of events changed from admitting that he was aware of the pregnancy and responsible for the fatal stabbing to the above version apparently accepted by

the district court. He explained that his prior versions were an effort to protect H.B.

We believe the jury still could find Mr. Tom guilty of second-degree malice-aforethought murder based upon his role of providing the knife with full knowledge of what was likely to occur. To be sure, as the government points out, both Mr. Tom and H.B. gave multiple accounts and certain evidence suggests that Mr. Tom's role was far greater than he admitted to at the time of the trial. Although claiming that he was unaware of the pregnancy, Mr. Tom had frequent intercourse with H.B. during the pregnancy. Moreover, H.B. was three years younger than Mr. Tom, had just given birth, had lost a significant amount of blood, and probably lacked the strength immediately after childbirth to sever the baby's carotid artery and jugular vein and cut his trachea in half. III Aplt. App. 297; IV Aplt. App. 577-78. Be that as it may, our standard of review requires us to defer to the district court's subsidiary factual findings as it saw the evidence and we cannot say that its conclusions are clearly erroneous or inconsistent with the verdict. See Gall, 128 S. Ct. at 597-98. We think that is particularly true in this case because both Mr. Tom and H.B. gave so many versions of what occurred.

The government also argues that the sentence fails to reflect the seriousness of the offense, promote respect for law, or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). Insofar as seriousness, the district court viewed the offense as

"particularly serious because it involved a heinous murder of a defenseless and most vulnerable human being."  II Aplt. App. 249.  The government suggests that the sentence is more consistent with lesser offenses ranging from voluntary manslaughter to transporting marijuana and is inconsistent with appellate cases that have affirmed substantial sentences for second-degree murder of a child. Less ad hoc, the government argues that the base offense level for second-degree murder was increased by five levels (to 38) effective November 1, 2004, to provide an approximate twenty-year sentence for such an offense on the theory that courts were departing upward in one-third of such cases and that, with acceptance of responsibility, a defendant might serve as little as eight years. U.S.S.G. App. C Supp., amend. 663.  The government also points out that the PROTECT Act established a mandatory life sentence for child abuse resulting in death.  18 U.S.C. § 1111(a)-(b).  We think that these are valid points to bear in mind as we consider whether the district court sufficiently justified the variance.

The government further argues that the sentence does not provide adequate deterrence and fulfill the need to prevent unwarranted sentencing disparities.  18 U.S.C. § 3553(a)(2)(B), (a)(6).  The district court considered the deterrence adequate as to Mr. Tom and others like him because Mr. Tom lacked previous exposure to the criminal justice system and would indeed serve 70 months. Although the government urges that a 70-month sentence may be inadequate to deter young parents from murdering an unwanted child, 70 months is a substantial

prison term for Mr. Tom. This is not a case where a non-custodial sentence was ordered. See Gall, 128 S. Ct. at 595 (recognizing greater severity of custodial sentences); cf. Pugh, 515 F.3d at 1187 (involving a probationary sentence).

The government also questions the district court's sentencing disparity analysis. We agree with the government that the purpose behind this provision is to promote national sentencing uniformity. United States v. Ivory, 532 F.3d 1095, 1107 (10th Cir. 2008). At the same time, we know that the district court may consider sentencing disparities between co-defendants. Gall, 128 S. Ct. at 599-600; Smart, 518 F.3d at 810. In this case, the district compared Mr. Tom's sentence with that of his co-defendant who received a 44-month sentence of probation. Of course, the trial judge repeatedly expressed concern that the co-defendant's sentence was too lenient because the trial judge did not fully appreciate her role in the offense until both parties testified at Mr. Tom's trial. II Aplt. App. 250; IV Aplt. App. 554-56; VI Aplt. App. 801-04. Ordinarily, comparing the sentence of an adult defendant to that of a juvenile would be of limited utility given that the two are not similarly situated. In these circumstances, however, the district court apparently concluded that Mr. Tom's limited intellectual capacity and youth made the comparison more apt. We cannot say that this individualized consideration is error given that the district court personally observed Mr. Tom and recognized that any error in sentencing H.B. did not warrant excessive leniency with Mr. Tom. VI Aplt. App. 804.

Additionally, merely because the district court changed its view of H.B.'s culpability after Mr. Tom's trial does not make the fact of H.B.'s sentence any less real. Besides, the district court's remarks about H.B.'s culpability were hardly met with adversarial testing—the district court might well have a different view were H.B. given notice and an opportunity to respond.

In the end, even though we might likely have chosen another sentence, we cannot say that the district court's sentence was not within the range of reasonable sentences, though perhaps at the low end. Unlike in <u>United States v. Friedman</u>, where we found a sentence to be substantively unreasonable because a 94-month variance was not supported by adequate explanation or evidence, here, the district court considered the § 3553(a) factors and set forth reasoning (that has support in the record) for its sentence. <u>See</u> <u>Friedman</u>, 554 F.3d at 1308-10. The district court is considered to be "in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, making credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." <u>Gall</u>, 128 S. Ct. at 597 (internal quotation marks omitted); <u>see</u> <u>Rita</u>, 127 S. Ct. 2469 ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant . . . than the . . . appeals court."); <u>see also</u> <u>Smart</u>, 518 F.3d at 808.

Moreover, we generally cannot review the weight assigned by the district

court to the various § 3553(a) factors.  Rather, "we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Smart, 518 F.3d at 808 (internal quotation marks omitted).  After careful consideration, we cannot conclude that the district court abused its discretion and the judgment must be

     AFFIRMED.

                          Entered for the Court


                          Paul J. Kelly, Jr.
                          Circuit Judge