**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TANNER DEAN WASHINGTON,

    Defendant - Appellant.

No. 24-7042
(D.C. No. 6:21-CR-00167-AEB-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

Defendant-Appellant Tanner Dean Washington appeals his sentence of life in

prison, which was imposed following his conviction of second-degree murder in

Indian Country. Mr. Washington pleaded guilty to the charge following the murder of

F.L., his seventeen-year-old girlfriend. Mr. Washington was twenty-four at the time

of her death. Although Mr. Washington's U.S. Sentencing Commission Guidelines

("Guidelines") range was calculated at 188 to 235 months, the district court granted

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Federal
Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

the Government's motion for an upward variance and sentenced Mr. Washington to life in prison. In pronouncing the life sentence, the district court discussed the unusual and tragic nature of F.L.'s death, the fact her body was never recovered, the need to protect society, and Mr. Washington's history of domestic abuse.

On appeal, Mr. Washington raises one argument: that the sentence is substantively unreasonable. He argues that the district court did not give appropriate weight to his acceptance of responsibility, overstated his criminal history, failed to factor in his psychological evaluation, and created a sentencing disparity. The Government responds that the sentence was well-supported and substantively reasonable.

For the reasons explained below, we agree with the Government and affirm.

## I.    BACKGROUND

### A.    Factual History

This case arises from the murder of F.L., a seventeen-year-old girl. On October 29, 2019, the sheriff's office in Seminole County, Oklahoma learned from a clergyman that F.L. had been shot. The clergyman stated he had learned this information from Mr. Washington, F.L.'s boyfriend at the time. The same day, officers met with Mr. Washington, who confirmed that F.L. was his girlfriend and that he had heard she had been shot. Mr. Washington later recanted and told investigators he had lied. He was arrested and jailed for obstructing an officer.

Officers subsequently conducted a welfare check at F.L. and Mr. Washington's residence but were unable to locate F.L. in the apartment. Two days later, F.L.'s

sister, J.L., called authorities to report that her sister was missing. J.L. reported that Mr. Washington had told her he dropped F.L. off at a restaurant on the evening of October 28, but when he returned, she was not there. Mr. Washington had also told J.L. he had heard F.L. had been shot. Also on October 28, J.L. had received a message from F.L. stating she was with a man named Darren, but J.L. doubted the message had been written by F.L. because of its poor grammar.

By November 1, the Seminole County Sheriff's Office asked the Oklahoma State Bureau of Investigations to investigate F.L.'s case as a missing persons investigation. The Bureau of Investigations determined F.L. was a homicide victim because her friends and family had not been able to contact her, and Mr. Washington had told multiple individuals that she was dead. Witnesses also reported to state investigators that Mr. Washington had F.L.'s cell phone. Investigators located Mr. Washington's car and identified F.L.'s blood in and around the passenger seat. They also reviewed text messages sent from F.L.'s phone and found they were grammatically inconsistent with F.L.'s normal style. And messages sent from her phone in the early morning hours of October 29th, asking for a ride home, were also inconsistent with the phone's location. The investigators further learned from J.L. that F.L. had been living with Mr. Washington, who was physically abusive.

Finally, one of Mr. Washington's ex-girlfriends, J.H., told investigators that on October 28, Mr. Washington had met with her, seemed frantic, and asked her if she thought a murderer could go to heaven. While they met, J.H. noticed blood on

3

Mr. Washington's pants and shoes. It was J.H. who arranged for Mr. Washington to speak with the clergyman who originally reported F.L.'s murder to the police.

Since F.L.'s disappearance, law enforcement, family, and volunteers have attempted to locate her body with no success. Even after Mr. Washington's arrest and eventual guilty plea, he has steadfastly refused to tell anyone where he hid F.L.'s body.

## B.     *Procedural History*

### 1.     **Information and Guilty Plea**

Prior to the events in this case, Mr. Washington was charged with domestic abuse in June 2019, pleaded no contest, and received a two-year deferred sentence. He was also charged in 2019 for obstructing a police officer, pleaded no contest, and received a two-year deferred sentence.[1]

In May 2021, Mr. Washington was charged in the instant case for first-degree murder in Indian Country. He pleaded not guilty and was remanded to the custody of the United States Marshals. After pleading not guilty to a superseding indictment, in August 2022, Mr. Washington waived indictment and was charged by information with second degree murder in Indian Country in violation of 18 U.S.C. §§ 1111(a), 1151, and 1152. Mr. Washington pleaded guilty to the information.[2]

---

[1] Mr. Washington's only criminal conviction before 2019 was in 2015, for the unauthorized use of a credit card. He received a two-year deferred sentence.

[2] The waiver of appellate rights in the guilty plea agreement reserved Mr. Washington's ability to appeal if his sentence exceeded the Guidelines range.

**2.      Presentence Investigation Report and Motion for Upward Variance**

Prior to sentencing, Mr. Washington received a thorough psychological evaluation. The evaluation reported that as a child, Mr. Washington was diagnosed with oppositional defiant disorder, depression, and reactive attachment disorder. The evaluation further reported that Mr. Washington had been hospitalized for psychiatric care as a preteen and teenager, and that his limited reading skills had prevented him from obtaining a high school degree and made him vulnerable to bullying. His IQ was reported as below average, and his adverse childhood event ("ACE") score was high.

Additionally, the United States Probation Office prepared a Presentence Investigation Report ("PSR"). The PSR calculated Mr. Washington's base offense level at 38 and deducted three points for acceptance of responsibility based on the guilty plea, resulting in a total offense level of 35. Mr. Washington had a criminal history category of II, which combined with his offense level resulted in a Guidelines range of 188 to 235 months.

The Government moved for an upward variance based on aggravating circumstances and extreme conduct. Specifically, the Government argued the circumstances of the murder, including that F.L.'s body was never found; Mr. Washington's criminal history; his lack of remorse, and the need to protect the public merited an above-Guidelines sentence of life in prison. The Government further argued that the murder was "outside the heartland of murder in the second-

degree cases" because Mr. Washington had murdered a seventeen-year-old girl and never revealed the location of her body. ROA Vol. I at 44.

### 3.    Sentencing Hearing

At Mr. Washington's sentencing hearing, the district court heard evidence from the Government concerning the extensive search for F.L.'s body. The court also heard impact statements from F.L.'s family members. Mr. Washington called the psychologist who had prepared his psychological evaluation, and she testified that she believed it was unlikely he would reoffend if he had access to treatment. However, on cross-examination, the psychologist admitted she did not speak to Mr. Washington about the murder, and that past mental health treatment had not stopped him from offending in the first instance.

After hearing this evidence, the district court granted the Government's motion for an upward variance and imposed a life sentence. The court stated it was not varying upwards based only on the fact that Mr. Washington never disclosed the location of F.L.'s body, but rather based on a "holistic[]" review of the 18 U.S.C. § 3553(a) factors and the "extraordinary and unusual and sad" nature of the case. ROA Vol. III at 110. It explained that "the circumstances of the murder," the fact F.L.'s body was never found, Mr. Washington's "history of domestic violence," and the "evidence as to his mental instability and inability to deal with rejection" demonstrated that he was "a dangerous person." *Id.* at 110–11. The court emphasized that Mr. Washington initially confessed to a clergyman and then recanted, used F.L.'s cell phone to hide the murder, and had prior convictions and arrests. Putting these

6

facts together, the court explained it would apply the upward variance because of

"the nature and circumstances of the case, as well as the history and characteristics of

[Mr. Washington]," explaining:

> The [c]ourt believes that a life sentence in this case is necessary to reflect the seriousness of the murder that occurred, to provide just punishment to the victim's family and the community, and to promote respect for the law. I also believe that a life sentence is necessary to deter other people from committing similar acts, [in addition to] protect[ing] the public from [the] future crimes of Mr. Washington.

*Id.* at 112.

The court continued that the Guidelines range of 188 to 235 months was

insufficient to protect the public "from a man who's willing to kill someone he

claims to love; someone who violates the rights of others, whether it be stealing their

credit card or taking their loved one away; and someone with a history of disrespect

for the law as seen by obstructing an officer." *Id.* at 112–113. The court

acknowledged Mr. Washington's "mental health struggles," but explained it had "to

balance the need to try to fix him with the need to keep the rest of us safe and to

provide just punishment." *Id.* at 113. As to the need to avoid unwanted disparities,

the court stated that "this case is unique and unusual and tragic, and so it's this

[c]ourt's position that this case cannot be measured against another case." *Id.* at 113.

The court concluded by reiterating that it had considered "the nature and

circumstances of the offense, the characteristics of Mr. Washington, [] his criminal

history," and the Guidelines calculations in the PSR. Specifically concerning the

Guidelines, the court stated it had "considered them and found them to be

7

appropriately advisory in nature, especially in this case." *Id.* The court noted that it would have pronounced the same sentence "if given the broadest possible discretion" because it "believe[d] strongly the specific facts and circumstances of this unique case require[d] a life sentence." *Id.* at 114.

Mr. Washington timely appealed.[3]

## II.    STANDARD OF REVIEW

"Substantive reasonableness focuses on whether the length of the sentence is reasonable in light of the factors contained in 18 U.S.C. § 3553(a)." *United States. v. Halliday*, 665 F.3d 1219, 1222 (10th Cir. 2011).[4] Substantive reasonableness is reviewed under the "familiar abuse-of-discretion standard of review," *id.* (quoting *Gall v. United States*, 552 U.S. 38, 46 (2007)), "looking at the totality of the

---

[3] The district court had jurisdiction pursuant to 18 U.S.C. § 3231 because Mr. Washington committed a federal offense within the Eastern District of Oklahoma. We have appellate jurisdiction over Mr. Washington's timely appeal of the final judgment sentencing him to life in prison under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[4] The factors that § 3553(a) requires district courts to consider are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" "(2) the need for a sentence imposed [] (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed . . . correctional treatment;" "(3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense [and] the applicable category of defendant as set forth in the [G]uidelines;" "(5) any pertinent policy statement . . . issued by the Sentencing Commission;" "(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution." 18 U.S.C. § 3553(a).

circumstances," *United States v. Cookson*, 922 F.3d 1079, 1090 (10th Cir. 2019) (internal quotation marks omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quotation marks omitted).

This standard applies "without regard to whether the district court imposes a sentence within or outside the advisory Guidelines range." *Id.* As such, "we do not apply a presumption of unreasonableness to sentences outside the [G]uidelines range." *Cookson*, 922 F.3d at 1090. "Instead, we give due deference to the district court's decision that the § 3553(a) factors, on the whole, justify the extent of the variance." *Id.* at 1090–91 (internal quotation marks omitted). "That we might reasonably have concluded a different sentence was appropriate is insufficient to justify reversal of the district court." *Id.* at 1091 (quotation marks omitted). However, "[a] 'major' variance" from the Guidelines range "should have 'a more significant justification than a minor one.'" *United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014) (quoting *Gall*, 552 U.S. at 50). Given that the Guidelines range in this case was 188 to 235 months, Mr. Washington's sentence of life imprisonment is a major variance that requires a "significant justification." *Gall*, 552 U.S. at 50.

District courts imposing sentences are charged with "engag[ing] in a holistic inquiry of the § 3553(a) factors," *Lente*, 759 F.3d at 1174 (quotation marks omitted), and "consider[ing] every convicted person as an individual," *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). A district court should not

rely solely on one § 3553(a) factor without addressing other relevant factors. *See Walker*, 844 F.3d at 1259. "A limited, brief, or inconsistent explanation" can hinder our review of a sentence's substantive reasonableness. *Cookson*, 922 F.3d at 1091. Therefore, we have concluded a sentence is substantively unreasonable where the district court placed "nearly exclusive focus" on one § 3553(a) factor and did not explain the weight afforded to other factors, preventing us from deferring to its determination that the sentence was supported by all the § 3553(a) factors. *Id.* at 1094–95.

At the same time, we owe considerable deference to the weight the district court affords each § 3553(a) factor and to its determination of the sentence "given all the circumstances of the case in light of the [§ 3553(a)] factors." *United States v. Gieswein*, 887 F.3d 1054, 1064 (10th Cir. 2018) (quotation marks omitted). We have recognized that "the district court need not afford equal weight to each § 3553(a) factor," and we defer "not only to a district court's factual findings but also to its determinations of the weight to be afforded to such findings." *Cookson*, 922 F.3d at 1094 (quotation marks omitted). This is because the district court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case." *Gall*, 552 U.S. at 51. "The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." *United States v. Barnes*, 890 F.3d 910, 915–16 (10th Cir. 2018) (quoting *Gall*, 552 U.S. at 51).

### III.    ANALYSIS

Mr. Washington asserts his above-Guidelines life sentence is substantively unreasonable, making four arguments. First, he argues that the Guidelines range was sufficient to achieve the ends of justice and achieve deterrence, and the upward variance is therefore "more than necessary" under the § 3553(a) factors. Appellant's Br. at 12. In making this argument, Mr. Washington stresses that because life sentences are rare for federal crimes generally, citing national statistics, his sentence was substantively unreasonable. Second, he argues his criminal history was over-represented, emphasizing he had no juvenile offenses, short probation sentences, and no formal convictions because he pleaded no contest to his previous charges. Third, he argues that he deserved leniency for acceptance of responsibility. And fourth, he argues the district court "underappreciat[ed]" his history and characteristics, namely the mental and emotional challenges revealed by the psychological evaluation. *Id.* at 24.

The Government responds that Mr. Washington "lays out several facts he feels the court overlooked, undervalued, or overemphasized," and essentially asks us to reweigh the § 3553(a) sentencing factors. Appellee's Br. at 11–12. The Government argues Mr. Washington's disagreement with the district court's weighing of the § 3553(a) factors fails to demonstrate the sentence is substantively unreasonable.

We agree with the Government that Mr. Washington impermissibly asks us to reweigh the § 3553(a) factors. Because the district court adequately considered the

11

§ 3553(a) factors and provided an adequate justification for the upward variance, we will not disturb the sentence on appeal.

First, we discuss a representative case and then turn to Mr. Washington's specific arguments.

### A.    United States v. Livingston

In *United States v. Livingston*, No. 21-2108, 2022 WL 15570654 (10th Cir. Oct. 28, 2022) (unpublished)[5] we held an upward variance to 240 months for second degree murder was substantively reasonable. *Id.* at *1. The defendant had a history of domestic abuse, and in one particularly "heinous" incident, beat his girlfriend so severely that she died from her injuries. *Id.* After being indicted for first-degree murder, the defendant pleaded guilty to second-degree murder, and the PSR calculated his Guidelines range at 168 to 210 months. *Id.* at *3. In support of a lesser sentence, the defendant presented evidence from a psychologist about his childhood traumas and emphasized his young age (eighteen) at the time of the murder. *Id.* The district court instead chose to vary upward to 240 months, emphasizing the heinous nature of the crime and the defendant's refusal to help his girlfriend after the attack. *Id.* at *3–4.

On appeal, the defendant argued his sentence was substantively unreasonable because the district court placed too much weight on his prior domestic violence

---

[5] We cite unpublished cases for their persuasive value only and do not treat them as binding authority. *See United States v. Ellis*, 23 F.4th 1228, 1238 n.6 (10th Cir. 2022).

incidents while ignoring his background of being an abuse victim, and that the 240-month sentence created disparities with other second-degree murder sentences. *Id.* at \*4. We disagreed and affirmed, holding the sentence was substantively reasonable. As to the argument that too much weight was placed on his past convictions as opposed to his traumatic past, we explained that we cannot reweigh the § 3553(a) factors on appeal. *Id.* at \*5. We further held that a 240-month sentence was within the "permissible range of choices" given the facts of the crime. *Id.* We noted that the district court reasonably weighed "the nature and circumstances of the offense" § 3553(a) factor in its decision, and that "to the extent [the defendant's] history and characteristics did not, on their own, justify a 30-month variance, the nature, circumstances, and seriousness of [the defendant's] offense and offense conduct, independent of and in combination with his history and characteristics, easily support the substantive reasonableness of the 30-month variance." *Id.* at \*6. Lastly, we explained that the district court reasonably concluded an upward variance was appropriate given the nature and circumstances of the offense, and thus did not create an *unwarranted* sentencing disparity. *Id.* at \*7–8.

## B.    *Application*

As in *Livingston*, Mr. Washington killed his girlfriend after abusing her. Unlike in *Livingston*, we know nothing of the circumstances of F.L.'s death, but that is only because Mr. Washington has refused to reveal where he hid her body. We do know that F.L.'s blood was found in Mr. Washington's car and that he sought to cover up his crime by stealing F.L.'s phone and sending messages to make her

friends and family think she was still alive. As in *Livingston*, the district court here found the nature and circumstances of the offense justified an upward variance. And as in *Livingston*, the district court acknowledged psychologist testimony about Mr. Washington's traumatic childhood, young age, and potential for rehabilitation, but ultimately determined the nature and circumstances of the offense and need to protect the public outweighed those factors.

While the upward variance to life here is much greater than the 30-month variance in *Livingston*, the district court provided a sufficiently "significant justification" for the variance. *Gall*, 552 U.S. at 50. Importantly, the district court explained why the nature and circumstances of the offense and the need to protect the public outweighed the evidence concerning Mr. Washington's mental health. It discussed most of the § 3553(a) factors and explained why deterrence (both specific and general), just punishment, and the nature and circumstances of the offense militated in favor of a higher sentence. And it acknowledged the history and characteristics of Mr. Washington—including his mental health struggles and past offenses—explaining why the other § 3553(a) factors outweighed his arguments for leniency, especially the need to protect the public. This discussion was sufficient under our precedent. *See, e.g.*, *United States v. Lucero*, 130 F.4th 877, 886–87 (10th Cir. 2025) (upholding "substantial variance" based on discussion of district court's discussion of § 3553(a) factors and the defendant's "lengthy and violent criminal history"); *United States v. Tom*, 327 F. App'x 93, 99–100 (10th Cir. 2009)

14

(unpublished) (affirming downward variance in second-degree murder case where district court adequately justified variance under the § 3553(a) factors).

In pronouncing this sentence, the district court did not impermissibly rely on a single § 3553(a) factor or fail to adequately consider other factors. *Cf. United States v. Crosby*, 119 F.4th 1239, 1249 (10th Cir. 2024) (remanding for resentencing where a district court focused almost entirely on a single § 3553(a) factor); *Cookson*, 922 F.3d at 1095–96 (same). Mr. Washington does not argue otherwise, but instead asserts that several § 3553(a) factors should have been weighed differently. But his disagreement with how the § 3553(a) factors were weighed does not make the sentence substantively unreasonable. Thus, Mr. Washington's arguments that his criminal history was overrepresented, that he was not given enough credit for acceptance of responsibility, and that his mental health was not adequately considered all fail. *See, e.g.*, *United States v. DeRusse*, 859 F.3d 1232, 1240–41 (10th Cir. 2017) (holding that where appellant "simply disagrees" with how the district court weighed the § 3553(a) factors, a sentence is substantively reasonable).

Similarly, Mr. Washington's argument that his young age at the time of offense should have been taken into account also impermissibly asks us to reweigh the § 3553(a) factors, because age is a subset of the history and characteristics factor. *See* United States Sentencing Commission, *Guidelines Manual*, § 5H1.1 (Nov. 2024). While a district court *may* account for a defendant's age in choosing to vary downward, it is not *required* to do so. *See id.* Moreover, a district court does not abuse its discretion by considering and rejecting such an argument as long as it

15

adequately discusses the § 3553(a) factors. *See United States v. Nunez-Carranza*, 83 F.4th 1213, 1222–23 (10th Cir. 2023); *see also United States v. Armstrong*, No. 21-8075, 2022 WL 1040277, at *3 (10th Cir. Apr. 7, 2022) (unpublished) (holding a district court did not abuse its discretion in not giving more weight to age as a mitigating factor); *United States v. Fowler*, No. 24-6087, 2025 WL 1166455, at *4 (10th Cir. Apr. 22, 2025) (unpublished) (district court did not abuse discretion in imposing within-Guidelines sentence despite defendant's young age (twenty-four) at time of offense).

Finally, we disagree that Mr. Washington's sentence creates an unwarranted sentencing disparity. True enough, in imposing sentences, district courts are required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records *who have been found guilty of similar conduct*." 18 U.S.C. § 3553(a)(6) (emphasis added). Because "[t]he purpose of the sentencing [G]uidelines is to eliminate disparities among sentences nationwide," *United States v. Franklin*, 785 F.3d 1365, 1371 (10th Cir. 2015) (internal quotation marks omitted), when a district court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities,"[6] *Gall*, 552 U.S. at 54. While national statistics can

---

[6] For example, in *Gall*, the district court correctly calculated the Guidelines range and then "gave specific attention to the issue of disparity" when deciding whether to impose a within-Guidelines sentence. *Gall v. United States*, 552 U.S. 38, 54 (2007). Similarly, the district court here carefully considered whether a within-Guidelines sentence was appropriate before varying upwards.

16

aid in this analysis, *see Lucero*, 130 F.4th at 890 (McHugh, J., concurring), these reports "are not dispositive because they do not provide information into a defendant's individual history and characteristics," and a defendant must "explain how he is similarly situated with those of the national average," *id.* at 887.

Here, Mr. Washington—like the defendant in *Lucero*—fails to explain how he is similarly situated to other federal offenders sentenced for second-degree murder. Instead, he simply provides statistics for federal life sentences generally to argue that his sentence was unwarranted. This fails to show the existence of a disparity among *similarly situated defendants* which could render his sentence substantively unreasonable. *See also Fowler*, 2025 WL 1166455, at *5 ("Without the ability to compare information about the offense levels, criminal histories, and specifics of the offenses" cited in statistics, "we cannot ascertain whether the other sentences involved similar circumstances or, if they did, whether the disparities were warranted" (internal quotation marks omitted)).

In short, given the discretion afforded to the district court in weighing the § 3553(a) factors, and given the sufficient explanation for the upward variance, Mr. Washington has not demonstrated that his sentence was substantively unreasonable.

## IV.    CONCLUSION

We AFFIRM Mr. Washington's sentence.


Entered for the Court


Carolyn B. McHugh
Circuit Judge