# United States Court of Appeals
## For the First Circuit

No. 19-1218

UNITED STATES OF AMERICA,

Appellee,

v.

ERIC MALMSTROM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]
[Hon. John H. Rich, U.S. Magistrate Judge]

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

Jane Elizabeth Lee on brief for appellant.
Halsey B. Frank, United States Attorney, and Benjamin M. Block, Assistant United States Attorney, on brief for appellee.

July 20, 2020

**SELYA, Circuit Judge**.  In the wrong hands, a telephone can be a fearsome weapon.  So it was here and — when the dust settled — a jury convicted defendant-appellant Eric Malmstrom on three counts of transmitting threatening interstate communications by telephone.  See 18 U.S.C. § 875(c).  The district court sentenced him to serve a twenty-seven-month term of immurement.[1]  On appeal, Malmstrom — represented by newly appointed appellate counsel — presses only a single claim of error:  he argues that the district court, on its own initiative, should have insisted that he undergo a competency evaluation.

We do not gainsay that the course of conduct in which Malmstrom engaged when committing the crimes of conviction was bizarre.  But bizarre behavior is not always a telltale sign that a criminal defendant is lacking in competency to stand trial.  Reviewing the record as a whole, we conclude that the district court did not abuse its discretion in failing to order a competency evaluation sua sponte.  Accordingly, we affirm Malmstrom's conviction and sentence.

We start by rehearsing the relevant facts and travel of the case.  In the fall of 2017, the Swedish Embassy in Washington,

_____

[1] Some pretrial proceedings were heard before a magistrate judge, who also presided over jury empanelment.  For present purposes, it would serve no useful purpose to distinguish between the district judge and the magistrate judge.  Instead, we take an institutional view and refer throughout to the district court.

D.C., began receiving phone calls from an individual who identified himself as Eric Malmstrom of Vinalhaven, Maine. The calls were replete with threats of violent mutilation of Swedish women and sprinkled with references to Islam and to an imaginary Swedish monarch. Malmstrom placed these calls both to the Swedish Embassy's main line and to the direct line of a consular employee, Zandra Bergstedt. Embassy officials notified the authorities.

As time went by, Malmstrom's unsettling calls multiplied. During a single week in February of 2018, Malmstrom left over one hundred voice messages on Bergstedt's line while she was away on vacation. In the following weeks, Malmstrom's calls to Bergstedt included content of an increasingly personal and disturbing nature, such as threatening to harm Bergstedt's children and alluding to her partner.

On March 5, 2018, Malmstrom called and spoke with Bergstedt. During this conversation, he told Bergstedt that he planned to travel by ferry from Maine to Washington to slit her throat and make her children watch. The next day, Malmstrom called Bergstedt from a different telephone number — one in southern Maine. Noting that Malmstrom was heading south, the authorities concluded that he was acting upon his threat to harm Bergstedt and obtained a warrant for his arrest. Federal agents detained Malmstrom later that month in Sanford, Maine. In due course, a federal grand jury sitting in the District of Maine returned an

indictment charging him with four counts of transmitting threatening interstate communications. See 18 U.S.C. § 875(c). In all, Malmstrom placed 121 calls to the Swedish Embassy's main line and 187 calls to Bergstedt's direct line. Over 60 of these calls were recorded on voicemail.

Leading up to trial, Malmstrom's court-appointed attorney twice filed motions to withdraw. The first withdrawal motion was filed in May of 2018 because Malmstrom wished to be represented by a Muslim lawyer. At a hearing on that motion, Malmstrom's attorney told the district court that "there's no issue with my ability to communicate with him." The court denied the motion.

The second withdrawal motion was filed in July of 2018. It was rooted in the attorney's frustration about Malmstrom's refusal to cooperate with him. Upon Malmstrom's agreement to resume cooperation, the district court denied the motion. During a later conference with the court and the prosecutor, Malmstrom's attorney acknowledged his client's mental instability generally but underscored that mental illness had not been raised in any formal way. He went on to emphasize that Malmstrom "doesn't see himself as mentally ill" and would "object vigorously" to any evidence of mental illness being introduced at trial.

Malmstrom's case was set for trial in late August of 2018. The government dropped one of the charged counts, and the

trial — which lasted only a single day — proceeded on the remaining three counts. Malmstrom waived his right to testify, acknowledging that he had been afforded sufficient time to consult with his attorney about the waiver. The jury found Malmstrom guilty on all three counts.

The district court convened the disposition hearing on February 26, 2019. Malmstrom testified in order to assert a claim of privilege over his mental health records. The court imposed a twenty-seven-month term of immurement together with a three-year term of supervised release. Malmstrom's attorney objected to the special mental health condition that the court incorporated into the supervised release conditions — a special condition that obligated Malmstrom to undergo mental health evaluation and treatment. The attorney asserted that the condition was unwarranted in light of Malmstrom's belief that he did not suffer from mental illness. The district court rejected Malmstrom's importunings, and this timely appeal followed. Before us, Malmstrom is represented by successor counsel.

Malmstrom's sole claim of error is that the district court blundered by failing to order a competency evaluation under 18 U.S.C. § 4241(a) sua sponte. In his view, the irrational nature of his offense conduct, without more, gave the district court ample reason to believe that he might well be incompetent to stand trial.

We review the district court's decision not to order a competency hearing that neither side had sought for abuse of discretion. See United States v. Kenney, 756 F.3d 36, 43 (1st Cir. 2014). The abuse-of-discretion standard is not monolithic: under it, we review findings of fact for clear error and questions of law de novo. See United States v. Nygren, 933 F.3d 76, 82 (1st Cir.), cert. denied, 140 S. Ct. 606 (2019).

We agree with Malmstrom's underlying premise: convicting a legally incompetent individual would violate due process. See Pate v. Robinson, 383 U.S. 375, 378 (1966); Pike v. Guarino, 492 F.3d 61, 75 (1st Cir. 2007). As a means of guarding against any infringement of this constitutional protection, Congress enacted 18 U.S.C. § 4241. Section 4241(a) requires a district court to order a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

Withal, we disagree with the conclusion that Malmstrom would have us draw from this uncontroversial premise. We have observed before that sometimes "words are like chameleons; they frequently have different shades of meaning depending upon the circumstances." United States v. Romain, 393 F.3d 63, 74 (1st

- 6 -

Cir. 2004). "Competency" is such a word. Competency to stand trial is considerably narrower than competency generally, with the result that competency to stand trial "must not be confused with broader or different uses of the term." Robidoux v. O'Brien, 643 F.3d 334, 339 (1st Cir. 2011).

In the last analysis, competency to stand trial "is a functional concept focusing on the defendant's part in the trial." Id. (emphasis in original). The test for competency in this context is whether a defendant is able to understand the proceedings against him and consult rationally with his counsel so as to assist in his own defense. See United States v. Brown, 669 F.3d 10, 17 (1st Cir. 2012); United States v. Giron-Reyes, 234 F.3d 78, 80 (1st Cir. 2000).

Malmstrom invites us to disregard this particularized framework and focus instead on the eccentric character of the behavior that gave rise to the indictment. He insists that the irrational nature of his offense conduct itself gave the district court reasonable cause to believe that it should order a competency evaluation sua sponte. Because this insistence is misplaced, we decline his invitation.

To be sure, Malmstrom's offense conduct raises a legitimate question about his overall mental health. That mental health issues exist, though, is not a per se bar to a finding of competency to stand trial. See United States v. Widi, 684 F.3d

216, 221 (1st Cir. 2012). One main reason that this distinction is logically compelled is that a competency evaluation under section 4241(a) is aimed at assessing a defendant's present ability to participate meaningfully in his trial, not his mental state at the time he perpetrated his offense. See Kenney, 756 F.3d at 44; Robidoux, 643 F.3d at 339. Thus, we train the lens of our inquiry on what the record shows regarding Malmstrom's capabilities at the time of the proceedings below.

Our starting point is Malmstrom's ability vel non to consult with his trial attorney. Malmstrom suggests that his attorney's motions to withdraw are telltale signs that his ability to communicate with counsel was somehow impaired. This suggestion elevates hope over reason.

It is a bedrock principle — and one that we reaffirm today — that a defendant must possess the ability to communicate with his counsel so that he can assist meaningfully in the preparation and presentation of his defense. See Kenney, 756 F.3d at 43; see also 18 U.S.C. § 4241(a). The attorney-client relationship, though, need not be congenial. See Brown, 669 F.3d at 18 (concluding that attorney-client disagreements did not prevent defendant from consulting with counsel with a reasonable degree of rational understanding). Here, Malmstrom fails to identify anything in the record that would justify a reasonable

inference that he was unable to consult rationally with his trial attorney.

Of course, Malmstrom at one point refused to cooperate with his attorney, prompting the latter to file a second motion to withdraw. Viewed in context, though, that disagreement did not constitute reasonable cause to question Malmstrom's competency to stand trial. A defendant's refusal to participate in his defense, as opposed to his inability to participate in his defense, does not, standing alone, signal his incompetency to stand trial. See id. Such a signal is plainly absent here: by the end of the hearing on the second motion to withdraw, Malmstrom had relented and agreed to continue working with his attorney.

We add, moreover, that "defense counsel enjoys a unique vantage for observing whether [his] client is competent." United States v. Muriel-Cruz, 412 F.3d 9, 13 (1st Cir. 2005). This vantage is especially important with respect to whether defense counsel's client was able to consult rationally with him. As a result, we afford significant weight to a lawyer's views as to whether his client has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Id. (emphasis in original) (quoting Giron-Reyes, 234 F.3d at 80). In this instance, Malmstrom's trial attorney — in response to a direct question posed in May of 2018 — unequivocally assured the district court that he was unaware of any communication issues.

At a post-trial hearing, Malmstrom's attorney stated that he and his client had been able to repair any past communication issues.

Let us be perfectly clear. Malmstrom's trial attorney did indicate an awareness that his client might have mental health issues. But a lawyer's general acknowledgement that his client may suffer from mental health issues does not, without more, "reach the 'reasonable cause' threshold to require a sua sponte [competency] hearing" under section 4241(a). United States v. Ahrendt, 560 F.3d 69, 74 (1st Cir. 2009). Here, there was no "more." Even though Malmstrom's trial attorney was generally aware of his client's mental instability, he affirmatively represented to the district court that Malmstrom could communicate meaningfully with him and assist in the defense. In a similar vein, Malmstrom himself expressed a desire to aid in his defense and participate fully in it. Given the totality of the circumstances (including the absence of any motion for a competency evaluation, see United States v. Landers, 564 F.3d 1217, 1221 (10th Cir. 2009)), we conclude that the district court lacked reasonable cause to believe that Malmstrom's mental health issues incapacitated him from communicating effectively with his attorney and assisting with his defense.

To complete the picture, we must inquire into Malmstrom's ability to understand the nature and consequences of the proceedings against him. Malmstrom points out that a defendant

- 10 -

must have a "rational understanding" of the nature of the proceedings, Muriel-Cruz, 412 F.3d at 13, and argues that his offense conduct demonstrated a detachment from reality that called into question his rationality. But this argument mixes plums with pomegranates: the rational "'understanding' required is of the essentials." Robidoux, 643 F.3d at 339. This encompasses matters such as "the charges, basic procedure, [and] possible defenses." Id. It does not, however, extend to matters "of legal sophistication." Id. After all, a defendant's understanding is not expected to reach the same order of magnitude as a lawyer's understanding. Rather, due process demands an understanding of only the most "critical parts of the proceeding." Giron-Reyes, 234 F.3d at 83.

Malmstrom offers scant support for the proposition — advanced for the first time by his appellate counsel — that his understanding was so impaired as to require the district court on its own initiative to evaluate his competency to stand trial. He points to a solitary phrase his attorney uttered at the hearing on the second motion to withdraw: "I'm a little concerned about [Malmstrom's] level of understanding." But the attorney went on to say — in a portion of the same statement that Malmstrom's appellate counsel ignores — that he could bring Malmstrom "up to speed" well before the trial commenced. And at another point, Malmstrom's trial attorney indicated that Malmstrom was able to

"receive[]" information regarding the proceedings and was able to "process that information."

A hoary maxim teaches that actions sometimes speak louder than words — and here, the record makes manifest that Malmstrom's actions loudly proclaimed his grasp of basic procedure. We list a few examples:

- Malmstrom spoke directly to the court at the hearing on the second motion to withdraw, indicating that he had rethought the matter and was willing, going forward, to resume communicating with his attorney and assist fully in his defense.

- Malmstrom expressed a desire to be present for jury empanelment and to participate in jury selection.

- At trial, Malmstrom engaged in a reasoned colloquy with the district court, relinquishing his right to testify in his own defense.

- At the disposition hearing, Malmstrom testified lucidly while asserting a privilege related to his medical records.

- Malmstrom listened to the pronouncement of sentence, apparently appreciated what it signified, and immediately requested an appeal.

These examples illustrate Malmstrom's ability to understand the most critical parts of the proceeding.

A defendant has a right, within wide limits, to shape his own defense. Even so, a district court must be watchful for signs that the defendant's competency to stand trial is in doubt. If the court has reasonable cause to believe that a substantial question exists concerning the defendant's competency to stand trial, it should not hesitate to order a competency evaluation sua sponte. See Nygren, 933 F.3d at 86; United States v. Maryea, 704 F.3d 55, 69 (1st Cir. 2013). But where, as here, the record reveals no reasonable cause to undergird such a belief, the court's intervention is not required. It follows that the court below did not abuse its discretion in failing to order a competency evaluation sua sponte.

We need go no further. For the reasons elucidated above, Malmstrom's conviction and sentence are

**Affirmed**.

- 13 -